Olympia Fields Country Club, Appellee, v. Bankers Indemnity Insurance Company, Appellant.

Gen. No. 43,020.

650

Heard in the second division of this court for the first district at the April term, 1944. ▮ Opinion filed April 19, 1945. Rehearing denied May 1, 1945. Released for publication May 2, 1945.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND and RAWLINS & WRIGHT, all of Chicago, for appellant; FLOYD E. THOMPSON, HENRY J. BRANDT, A. L. RITTENBERG and CHESTER D. KERN, all of Chicago, of counsel.

GOTTHARD A. DAHLBERG, of Chicago, for appellee; SARSFIELD COLLINS, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Bankers Indemnity Insurance Company, defendant, issued to Olympia Fields Country Club, plaintiff, a public liability policy. Thereafter Alice Jean Halladay brought a suit against the plaintiff to recover for personal injuries sustained by her while an invitee on its premises and she recovered a judgment against it in the sum of $20,000. The First Division of this court affirmed the judgment (*Alice Jean Halladay v. Olympia Fields Country Club*, 295 Ill. App. 622) and the Supreme court denied an appeal. Defendant then paid to Mrs. Halladay $10,815.80. Plaintiff paid Mrs. Halladay the amount of the balance due on the judgment and sued to recover from defendant the said amount. A jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $10,853.11. A motion for judgment notwithstanding the verdict and an alternative motion for a new trial were overruled. Defendant appeals from the judgment entered upon the verdict.

Defendant's policy insured plaintiff against loss by reason of liability imposed by law for damages arising out of bodily injuries, etc., accidentally suffered by any person or persons not employed by the assured while within or upon the premises of the insured. The limit of liability under the policy was $10,000 for bodily injuries to any one person. The policy provided, *inter alia:*

"In Addition to the Above the Company Agrees: (2) To Make Such Investigation at its own cost of all accidents reported to the Company to which this Policy applies, and to undertake such negotiations for settlement, or to make such settlements of any claims for damages made against the Assured, as the Company may deem expedient; and in the event of suit being brought against the Assured on account of such an accident, to defend such suit, even if groundless, in the name and on behalf of the Assured, unless or until the Company shall elect to effect settlement thereof."

Plaintiff's amended complaint consisted of six counts. At the close of plaintiff's case motions to direct a verdict as to counts three and four were sustained, and motions to direct as to counts one, two, five and six were overruled. Count one charged that defendant failed to exercise good faith toward plaintiff in that prior to the trial it was fully apprised of the seriousness of the injuries received by Mrs. Halladay and fully aware of the danger to the rights of plaintiff should a judgment in excess of the policy limit be rendered in said suit, yet it arbitrarily and unreasonably refused to accept an offer of Mrs. Halladay to settle her suit for the sum of $3,500. Count two charges that defendant failed to exercise good faith toward plaintiff when it arbitrarily and unreasonably refused to compromise for $8,000 the judgment in favor of Mrs. Halladay before it was affirmed by the Appellate court, although defendant was fully aware of the imminent danger to the rights of plaintiff by reason of the entry of said judgment. Counts five and six make the same charges as are contained in counts one and two and in addition charge that the refusal to accept the said offers was contrary to the advice of its attorney, who was in charge of the defense of the *Halladay* suit.

Defendant states: "That it fully performed, and in good faith, each and every of its obligations under the terms and provisions of the said policy of insurance; that it was within its contractual rights to refuse each of the two offers to compromise and that its refusal in each case was neither arbitrary nor unreasonable; that it defended the plaintiff on the trial, prosecuted the appeal to the Appellate Court, and petitioned for leave to appeal to the Supreme Court in an honest belief that the claim of Mrs. Halladay was without merit; that although it may now be said as a matter of hindsight that the defendant would have exercised better judgment had it accepted either of the offers of

compromise, a mere error of honest judgment is not bad faith and is insufficient to sustain a recovery by the plaintiff; that it is not guilty of bad faith as charged in the plaintiff's complaint." Plaintiff contends that defendant had full control of the investigation, trial and settlement of the *Halladay* case and that it was guilty of bad faith toward the insured when it refused to accept the two offers of settlement made by counsel for Mrs. Halladay; that the jury were warranted in finding that defendant refused to accept the offers after its counsel had recommended to it that it accept the offers; that the said refusal was an arbitrary and unwarranted act under all the facts and circumstances, and that the verdict and judgment in the instant case were fully justified under the evidence and the law.

Defendant assumed charge of the defense of the *Halladay* case and employed Joseph H. Hinshaw, an able and experienced lawyer, to try the case; he was in charge of the defense and also prosecuted the appeal. Defendant notified plaintiff that the suit was brought to recover damages in a sum in excess of the policy limit of liability and invited plaintiff to have its personal counsel participate in the defense. Thereafter John H. Bishop, the regular attorney for plaintiff, "rendered assistance to Mr. Hinshaw in the trial . . . helped him get witnesses, and some of the records of the club," and discussed the case with Hinshaw at different times. Hinshaw, a witness for defendant, testified that Bishop chose to "sit on the back bench and watch." Bishop also reviewed the briefs that were written by Hinshaw and filed in this court upon the appeal from the judgment. At the opening of the trial Erwin W. Roemer, Mrs. Halladay's attorney, made an offer to Hinshaw to compromise her case for $3,500, and Hinshaw submitted the offer to Mr. Elliott, the claim agent of defendant, who declined to accept it. During the trial, the trial

judge called the attorneys into his chambers, where Roemer told the judge that they were willing to take $3,500 in settlement of the case, and Roemer testified that "Hinshaw then said that he had discussed the settlement repeatedly with his client and had not been able to do anything with them." Sometime after the judgment for $20,000 had been entered, Roemer offered to settle the judgment for $8,000. Bishop testified that he communicated the offer to Hinshaw and that the latter stated that he thought that $8,000 would be a good settlement and he would recommend it to defendant; that about a week or two thereafter Hinshaw telephoned him that defendant declined to make the settlement. Hinshaw testified that he never told Bishop or Roemer that he would recommend to defendant that it should accept the offer of $8,000 and that the only recommendation he made to defendant was contained in a letter he wrote to it the day after the trial judge in the *Halladay* case decided the motion for a new trial. The material parts of the letter, introduced in evidence by defendant, are:

"October
Two
1937

"Bankers Indemnity Insurance Company
"Insurance Exchange, South
"Chicago, Illinois

"Halladay vs Olympia Fields; 3 GL 26708

"Gentlemen:

"We regret to report that Judge Frankhauser, on October 1, 1937, came to a decision on our motion for new trial.

. . . . . .

"I notified Mr. Bishop by telephone and he states that the Board of Directors of Olympia Fields Country Club will meet on October 9, 1937, at which time

the circumstances will be brought to their attention.

"I cannot think of anything which we might have done and failed to do and am of the opinion that there are at least four reversible errors in the record.

. . . . . .

"My recommendation is that no offer of settlement be made and that the case be carried to the Supreme Court if necessary. I cannot believe that the Appellate Court or the Supreme Court will allow this judgment to stand.

"When I discussed the matter with Mr. Bishop, attorney for Olympia Fields Country Club, he stated that he realized we had done everything possible. He and our Mr. Treadway were with me all through the trial of eight days and Mr. Bishop understands the situation first hand.

"I told Mr. Bishop that I would recommend no payment be made and he stated he feels the same way about it, but as soon as the Board of Directors of Olympia Fields Country Club meet he will communicate their wishes in the matter to the company, and at that time be prepared to discuss whether or not any offer of settlement will be made.

"In the meantime we will proceed on the theory that the case will be appealed, will prepare our form of bond and prepare the record, a great deal of which has already been written up, as you know.

. . . . . .

"My definite opinion is that this judgment will not stand.

"Very truly yours,
"J. H. Hinshaw."

Hinshaw testified that he told Bishop that he was strongly of the opinion that the Appellate court would reverse the judgment, and that Bishop entertained the same opinion. On November 23, 1937, plaintiff wrote a letter, dictated by Bishop, to defendant, which

stated that Mrs. Halladay had agreed to accept the sum of $8,000 in full satisfaction of the judgment and that

"Olympia Fields Country Club now demands that the Bankers Indemnity Insurance Company pay the amount which the plaintiff in the above action has agreed to accept in full satisfaction of the judgment now existing against Olympia Fields Country Club. In the event you do not pay the amount so agreed to be accepted and Olympia Fields Country Club shall be held for any amount in excess of the coverage provided for by the policy of insurance above described, we shall expect reimbursement from you for any amount which we are compelled to pay in excess of the insurance coverage, together with our costs and expenses incurred in connection therewith.

"Yours very truly,

"Olympia Fields Country Club

"By Horace P. Ramey

"President."

Defendant contends that we should hold that the trial court erred in refusing to instruct the jury at the close of all of the evidence to find defendant not guilty, and that we should reverse the judgment of the trial court and enter judgment here for defendant.

"'A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,

—we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.' (*Hunter v. Troup,* 315 Ill. 293, 296, 297.)'' (*Mahan v. Richardson,* 284 Ill. App. 493, 495. See, also, *Wolever v. Curtiss Candy Co.,* 293 Ill. App. 586, 597; *Cooper v. Safeway Lines, Inc.,* 304 Ill. App. 302, 312, 313; *McCarthy v. Rorrison,* 283 Ill. App. 129; *Rose v. City of Chicago,* 317 Ill. App. 1, 12.)

In the *reply* brief of defendant and upon the oral argument its counsel stated that the only evidence to support plaintiff's claim that Hinshaw recommended settlement to his client is the testimony of Bishop, and counsel argues that the objections made by defendant during the trial to the admission of this testimony should have been sustained; that such a statement could not bind defendant, and therefore we should disregard this testimony in considering the instant contention. It is a sufficient answer to defendant's argument to say that the instant point was not made in the brief filed by defendant, and, therefore, under our rules of court, it cannot be considered. We may say, however, that in the *brief* of defendant it contended that it had a right to refuse the offer to settle for $8,000, even if its attorney recommended that it be accepted, and it made a somewhat extended argument in support of the contention. To quote from defendant's brief: ''But even if the defendant's refusal had been contrary to the advice of the trial attorney, that fact alone would not be proof of bad faith on its part. The proof shows that the defendant had a claims department, *and it is common knowledge* that insurance companies have their legal staffs; their staffs of claims men, investigators and adjusters, who are experts in their fields and that their opinions as to whether an offer of settlement should be accepted is based on an experience which the trial attorney does not ordinarily have. The insurance com-

pany investigates the case, collects the data and evaluates the evidence on the questions of liability and damages, and this is ordinarily done immediately after an accident and before suit is filed and the case turned over to the trial attorney. The advice of the trial attorney may be valuable in deciding whether an offer of settlement should be accepted or rejected, but it is not controlling. And the fact that the insurance company refuses an offer of settlement, contrary to the advice of its trial attorney, with a bad result, is not proof of bad faith on its part. It is merely proof that the judgment of the trial attorney was better than its own as to what would be the final outcome of the case.'' (Italics ours.) No proof was offered as to the alleged facts assumed in the argument. Defendant then cited in support of its argument *Lawson & Nelson Co. v. Associated Ind. Corp.*, 204 Minn. 50, and *Wakefield v. Globe Indemnity Co.*, 246 Mich. 645. But nowhere in defendant's brief did it make the contention that the testimony of Bishop was incompetent and that the trial court erred in not sustaining defendant's objection to it. We must not be understood as holding or intimating that the said testimony of Bishop was incompetent. In *Johnson v. Hardware Mut. Casualty Co.*, 108 Vt. 269, the court held that the attorneys and an adjuster for the insurance company were agents of the company in the trial *and in the negotiations for settlement*, so that their acts, so far as authorized, were the acts of the company. In *Burnham v. Commercial Casualty Ins. Co.*, 10 Wash. 2d 624, cited by defendant, the insurer's attorney testified (pp. 629, 630) to a conversation with the attorney for the insured in relation to a settlement of the cause. The same situation was present in *Lawson & Nelson Co. v. Associated Ind. Corp.*, *supra* (pp. 53, 54, 55) ; *Mendota Electric Co. v. New York Indemnity Co.*, 175 Minn. 181, 182; *Wakefield v. Globe Indemnity Co.*, *supra*, 246 Mich. 645, 657, 658, all

cited by defendant. In *McCombs v. Fidelity & Casualty Co. of New York* (Mo. App.), 89 S. W. 2d 114, 116, cited by plaintiff, evidence was given as to talks between the attorneys relative to settlement. Defendant, in a reply to "memorandum of authorities" filed by plaintiff, contends that in none of the above cases does it appear that the competency of the testimony was challenged. As all of the authorities hold that an insurer, under certain circumstances, may be guilty of bad faith in refusing to settle a claim for damages, it would be a strange rule of law that would bar the attorneys who participated in the trial of a cause and in the negotiations for settlement from testifying, *in a proceeding like the present one,* as to matters that bear upon the question as to whether the defendant acted in good faith when it refused to accept the offer to settle. Our examination of the cases satisfies us that it has been the general practice for the attorneys to testify upon the subject in question. Defendant contends that Bishop's testimony is not sufficient evidence to show that defendant acted in bad faith toward plaintiff in refusing the said offer; that the only reasonable conclusion that can be drawn from the evidence is that the refusal was made in the *bona fide* belief that the action could be defeated upon appeal, and in support of its argument defendant calls attention to certain circumstances, viz., that Mrs. Halladay sued to recover $50,000 for damages; that her attorney, Roemer, was willing to settle the claim before trial for $3,500, and that he was willing to settle the claim for $8,000 after plaintiff had recovered a verdict and judgment for $20,000. That defendant retained an able and experienced counsel to defend the assured, and that said counsel conducted the defense upon the trial and upon the appeal with ability and care, is not questioned by plaintiff. The opinion of the First Division of this court in the *Halladay* case was not introduced in evidence and, therefore,

we cannot consider what effect, if any, it might have upon the question before us, and there is nothing in the record to show the nature of the proof introduced by the parties during the trial of that suit.

The gist of plaintiff's cause of action is that it was the duty of the insurance company to exercise good faith toward plaintiff in the matter of the proposed settlements of the *Halladay* suit; that in view of all the facts and circumstances present at the time of the offers its refusal to settle the suit for $3,500 was an arbitrary and unreasonable act; that its refusal to settle the judgment for $20,000 for $8,000, contrary to the advice of its attorney, was an arbitrary and unreasonable act, and that in so acting it failed to exercise good faith toward the insured.

The question before us is, Did plaintiff make out a *prima facie* case that defendant acted in bad faith toward plaintiff when it refused to accept the settlements offered by the plaintiff in the *Halladay* case? Both parties agree that there is no Illinois case that bears upon the question. The decisions of sister States upon the question appear, at first blush, to be in hopeless disagreement, but a careful study of the cases convinces us *that the disagreement results from a difference of opinion as to the nature and kind of proof that the insured must introduce to make out a prima facie case of bad faith against the insurer.* All of these cases acknowledge that an insurer may be liable for the entire judgment recovered against an insured although the judgment exceeds the amount of liability in the policy if the insurer be guilty of fraudulent conduct or a lack of good faith in refusing to settle.

In *American Mut. Liability Ins. Co. v. Cooper,* 61 F. 2d 446, a judgment was obtained against the insured for $13,500 in a personal injury action. The insurer paid the plaintiff $5,000, the limit of liability stated in the policy. The insured paid the balance of

the judgment and sued the insurer to recover the amount he had paid, upon the ground that the insurer failed and refused to avail itself of the opportunities it had to settle the claim for damages within the $5,000 limit. In its opinion the Circuit Court of Appeals of the Fifth Circuit states (pp. 447, 448):

"It is well settled in cases of limited liability insurance that the insurer may so conduct itself as to be liable for the entire judgment recovered against the insured, although that judgment exceeds the amount of liability named in the policy. But the courts that have considered the question are not in agreement as to the nature and kind of proof which it is incumbent upon the insured to make in an action against the insurer for the excess which the insured has been compelled to pay over the amount named in the policy. Some of these cases hold that the insured is entitled to recover upon proof that the insurer in refusing to settle a claim for damages covered by the policy was guilty of negligence. *Cavanaugh Bros. v. General Accident Fire & Life Assurance Corp.,* 79 N. H. 186, 106 A. 604; *Douglas v. U. S. F. & G. Co.,* 81 N. H. 371, 127 A. 708, 37 A. L. R. 1477; *G. A. Stowers Furniture Co. v. American Indemnity Co.* (Tex. Com. App.), 15 S. W. (2d) 544; *Attleboro Mfg. Co. v. Insurance Company* (C. C. A.) 240 F. 573. Other decisions impose a heavier burden upon the insured, and deny recovery unless he can show that the insurer in refusing to make settlement acted in bad faith. *New Orleans, etc., R. Co. v. Maryland Casualty Co.,* 114 La. 154, 38 So. 89, 6 L. R. A. (N. S.) 562; *Wisconsin Zinc Co. v. Fidelity, etc., Co.,* 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918 C, 399; *Auerbach v. Maryland Casualty Co.,* 236 N. Y. 247, 140 N. E. 577, 28 A. L. R. 1294. There are cases of the latter class which exonerate the insurer if, considering its own interest only and ignoring entirely the interest of the insured, it acts in good faith; but the prevailing rule seems to be

that the insurer must act in good faith toward the insured. *Brassil v. Maryland Casualty Co.,* 210 N. Y. 235, 104 N. E. 622, L. R. A. 1915 A, 629; *Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 231 N. W. 257, 235 N. W. 413.

"*We are not concerned here with the question whether appellee could have recovered on the ground of mere negligence, since recovery is now sought only on the ground that appellant did not act in good faith toward him.* [Italics ours.] In our opinion the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. The insurer, as it had a right to do under the policy, assumed exclusive control of the claim against the insured, and took unto itself the power to determine for the insured all questions of liability, settlement, of defense and management before and during trial, and of appeal after final judgment. We are of opinion that this relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured. It was open to the jury to find that the insurer did not perform this duty. The insurer failed to interview the witnesses, or to make any effort to determine whether there was any liability upon the claim asserted against the insured for damages. It did not attempt to acquaint itself with the extent of Mrs. Auman's injuries. It was not in position to act intelligently, or in fairness to the insured in considering the offer of settlement made before suit was brought. It ignored the advice of its counsel to settle before the case came on for trial. During the trial it offered to settle for $3,500, thus apparently admitting the liability of the insured for substantial damages; but it failed to have a representative at the trial with authority to settle within the limit of liability

named in the policy. It finally rejected a reasonable offer of settlement within that limit because the insured would not assume a part of its contractual liability. The jury were therefore warranted in finding that the insurer did not act in good faith toward the insured in considering Mrs. Auman's claim for damages, in refusing to settle, and in demanding that the insured contribute to the settlement which it could and should have made at its own expense.''

We cannot agree with defendant's argument that the decision in the foregoing case was based upon the negligent conduct of the insurer. The part of the opinion that we have italicized shows that recovery was sought solely upon the ground that the insurer did not act in good faith toward the insured. The court referred to the negligence of the insurer merely to show that it was not in a position to fairly consider the offer of settlement.

In *Wakefield v. Globe Indemnity Co., supra,* 246 Mich. 645, the City of Wakefield operated an automobile bus line and the insurer carried its liability insurance, under joint policy, in the sum of $10,000 for damages to any one person. Frank Borski was injured by one of the City vehicles, brought suit for damages, and the insurer assumed the defense, with the City attorney cooperating and appearing as attorney of record. Borski recovered judgment for over $15,000, which was affirmed by the Michigan Supreme court. The City paid the judgment and the insurer reimbursed it in the sum of $10,000 and costs. The City brought a suit in tort to recover the balance of the judgment, basing its claim on negligent defense of the *Borski* suit by defendant, its failure to exercise reasonable care to effect a compromise of Borski's claim, and its bad faith in refusing settlement. It appears that when the trial of the *Borski* case was nearly finished, after Borski's medical witnesses had testified, and after the insurer's attorney had talked

with witnesses for the defense, he came to the conclusion that the case was hopeless, made advances to Borski's attorney for settlement, and agreed with him on a compromise in the sum of $4,325, subject to defendant's approval. The City attorney participated in the negotiations. The attorney for the insurer wired the insurer as follows: "This is a dangerous case. Stop. One hundred per cent. disability and may be permanent. Stop. Medical testimony strong. Stop. Do not submit counter offer as we may finish case today. Stop. I advise settlement." (p. 654) Defendant's principal agent, Campbell, instructed Selb, its adjuster, who was attending the trial, to tell Burritt, the attorney who conducted the defense, that the proposition was declined. The majority of the Supreme court held that the burden was upon the plaintiff to prove that Campbell in refusing to settle was actuated by bad faith, and further held that no inference could be drawn from his mere refusal to accept the offer that he did not exercise an honest judgment or act in good faith; that the trial court erred in overruling the motion for a directed verdict and in refusing to enter judgment notwithstanding the verdict. As we read the opinion of the majority of the court, they held, in effect, that in order to make out a *prima facie* case against the insurer the plaintiff must successfully carry a burden, practically impossible to bear, of proving, in some direct way, the actual state of mind of Campbell when he refused to accept the tentative settlement. The court seemed to forget that the state of mind of an individual, even in a criminal case, is most often proved by circumstantial evidence. The opinion ignored the fact, and the weight that should be attached to it, that the knowledge of Burritt was the knowledge of the insurer, and that his opinion was that of an agent of the insurer and was based upon the actual evidence that was developed upon the trial. The opinion of the

three judges of the court who did not agree with the opinion of the majority is, in our judgment, far more persuasive than the opinion of the majority. They state (p. 653):

"Good or bad faith is a state of mind. Of necessity, it must be determined from proof of conduct, except as the owner of the mind discloses its operations. *Defendants, being corporations, could act only through agents, whose state of mind is that of the defendants.*"

They further state (pp. 654, 655):

"*The only evidence of the state of mind of any of defendants' agents was that of Mr. Burritt, whose opinion it was that Mr. Borski would surely recover, would obtain a large verdict, and that settlement was advisable and the amount reasonable. Mr. Burritt's knowledge of the fact was defendants' knowledge,* 6 C. J., p. 638, *and they were bound to take into account what he knew. Stowers Furniture Co. v. American Indemnity Co., supra* [295 S. W. 257].

"Where there is any evidence whatever of bad faith, the issue is for the jury. Mr. Burritt's testimony *and Mr. Campbell's silence* were evidence that the defendants acted in bad faith and required submission of the issue to the jury." (Italics ours.)

In *Georgia Casualty Co. v. Mann*, 242 Ky. 447, the assured sought to recover an amount in excess of the policy of insurance on the ground that the insurance company was negligent in not compromising the case for less than the policy limit, $5,000. The injured person, before trial, offered to settle for $5,000. When this fact was communicated to the insurer's attorney he expressed the opinion that he had a good case and refused to settle for any sum greater than $1,500. At the time of the refusal the insurer's attorney had already received a report from his investigator as to the facts of the case and it appears from the opinion of the court that the evidence on the question of liability was conflicting. There was a

verdict and judgment for the plaintiff and the Supreme court of Kentucky held that the attorney of the insurer in refusing to settle committed a mere error of judgment for which it cannot be held liable. The court, in its opinion, uses the following language (pp. 451, 452) : "The gift of prophecy has never been bestowed on ordinary mortals, and as yet their vision has not reached such a state of perfection that they have the power to predict what will be the verdict of the jury on disputed facts in a personal injury case." The Kentucky court may have had the record in the personal injury trial before it, for it states (p. 452) that "the evidence on the question of liability was conflicting." The court concluded (p. 452) :

"In announcing this conclusion we do not mean to be understood as holding that under no circumstances may an insurer incur liability in excess of the limit fixed by the policy for its refusal to settle. The agent is always under the duty to exercise the utmost good faith toward his principal, and we agree with the courts that hold that, if an insurer in refusing to settle acts in bad faith, it may become liable in excess of the policy limit. What facts will constitute bad faith need not now be determined."

The decision in that case was severely criticised in *Tyger River Pine Co. v. Maryland Casualty Co.,* 170 S. E. (S. C.) 346, where the Supreme court of South Carolina held that an insurer owes the insured the duty of settling personal injury claims if settlement is the reasonable thing to do. The court states (pp. 348, 349) :

"Defendant earnestly contends that there is no proof of negligence on its part in and about the negotiations for compromise and settlement and the defense of the action. We think there was proof sufficient to take the case to the jury, to be found in the letters pertaining to the various offers and counter-offers of settlement and in the testimony of

T. S. Adams. The force of that evidence was solely a question for the jury. It was not, therefore, error to refuse to direct a verdict on this ground.

"Defendant further contends that there is no proof of the allegation that defendant acted in bad faith in its conduct of the negotiations for settlement and its conduct of the defense. This, too, was a question for the jury to decide. It heard all the testimony, and might well be left to decide whether the letters and oral testimony showed that defendant conducted the negotiations with an eye solely to its own interests and in disregard of plaintiff's rights and interests. Especially was this inquiry pertinent in view of the evidence which tends to show that after the verdict for $7,000 was rendered, defendant might yet have settled for $5,000, the amount of the policy of indemnity for which plaintiff had paid it. This settlement would have saved plaintiff harmless. The defendant places its reliance for support of its contention on the opinion of the Court of Appeals of Kentucky in the case of *Georgia Casualty Company v. Mann,* reported in 242 Ky. 447, 46 S. W. (2d) 777, 779. We do not agree with the conclusion reached by the Kentucky court in that case. The argument and logic of the line of cases of which the *Attleboro* case, *supra* [*Attleboro Mfg. Co. v. Frankfort, etc., Co.* (C. C. A.) 240 F. 573], is typical, is far more convincing, and is more in consonance with the contract of indemnity here under consideration. The Kentucky court says: 'At the outset it must not be overlooked that the insurance company is something more than the mere agent of the insured. Under the contract it occupies a twofold relation, one as insurer and the other as agent of the insured, *and may look to its own interests as well as those of the insured,* and what would be considered a compromise from the standpoint of the insured might not be a compromise from the standpoint of the insurance company.' (Italics added.)

"We especially dissent from the language of the opinion which we have italicized. The very thing which the appellant in the case which we have before us for determination undertook to do was to hold the respondent harmless in the disposition of Chesser's claim. If, in the effort to do this, its own interests conflicted with those of respondent, it was bound, under its contract of indemnity, and in good faith, *to sacrifice its interests in favor of those of the respondent.* If the Kentucky rule is the law, then a policy of indemnity such as is before us becomes a delusion and a snare. In the nature of things when there is a conflict of interests—as is inevitably the case in all such matters—the company will give the preference to its own.

"For the protection of its interests the casualty company especially reserved the right to control and direct the matter of negotiations for settlement and compromise, and of the defense of the action if litigation ensued. The plaintiff was directly deprived of a voice or part in such negotiations and defense. If the rule of the Kentucky case shall prevail, the indemnity companies may well felicitate themselves, for they are in position to say to the insured, 'Heads I win, tails you lose.'

"As was said in *Rumford Falls Paper Co. v. Fid. & Cas. Co.,* 92 Me. 574, 43 A. 503, 505, in reference to one of these policies in which case a principle akin to that for which the appellant here contends arose: 'Thus, the assured helplessly awaited the determination of the question whether in that instance its policy of indemnity was to be a shield in its own hands, or a sword in the hands of its antagonist.'

"Did the appellant act in good faith when it refused to settle a judgment of $7,000 for the sum of $5,000? That was a question for the jury to decide in the light of the contract of indemnity, the law pertaining to its construction, and the evidence which showed the action

and conduct of the appellant in the premises; the jury by their verdict have in effect said that appellant did not act in good faith. We shall not disturb their finding.''

In *Hilker v. Western Automobile Ins. Co.*, 235 N. W. (Wis.) 413, the plaintiff sued the defendant to recover the excess over the coverage of an automobile indemnity policy which was paid by the plaintiff to satisfy a judgment paid by plaintiff for damages for injuries caused when his automobile struck a child. The defendant appealed from a judgment against it. The policy gave the insurance company full and complete control of the handling and adjustment of all claims for liability made against the insured. The insurance company took full control of the defense of the two actions that were brought against the insured. In its opinion the court states that the confusion on the part of the courts was purely tautological and sprang from a none too critical use of terms. The court further states (pp. 414, 415, 416):

''. . . Terms which are not strictly convertible or synonymous have been used by different courts to indicate the same thing. Negligence has been used by some courts to mean the same thing that other courts have designated as bad faith. Bad faith, especially, is a term of variable significance and rather broad application. Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. In order to understand what is meant by bad faith, a comprehension of one's duty is generally necessary, and we have concluded that we can best indicate the circumstance under which the insurer may become liable to the insured by failure to settle by giving with some particularity our conception of the duty which the written contract of insurance imposes upon the carrier.

''In express terms the contract imposes no duty at all a breach of which makes the insurer liable to the

insured for a failure to settle or compromise a claim. However, all courts are agreed that the insurer does owe to the insured some duty in this respect. This duty is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer. By the terms of this contract the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in any negotiations for settlement or legal procedure. It is generally understood that these are rights and privileges which it is necessary for the insurer to have in order to justify or enable it to assume the obligations which it does in the contract of insurance. So long as the recovery does not exceed the limits of the insurance, the question of whether the claim be compromised or settled, or the manner in which it shall be defended, is a matter of no concern to the insured. However, where an injury occurs for which a recovery may be had in a sum exceeding the amount of the insurance, the interest of the insured becomes one of concern to him. At this point a duty on the part of the insurer to the insured arises. It arises because the insured has bartered to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense. It is quite apparent that this right was given to the insurance company to induce it to enter into the contract of insurance, and that it is a necessary right to be possessed by it if it is to write the insurance upon the terms stipulated. It is a right to be exercised by the insurer in its own interest.

''It is the right of the insurer to exercise its own judgment upon the question of whether the claim

should be settled or contested. But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for a settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its interest will be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. But, as already stated, such decision should be an honest and intelligent one. It must be honest and intelligent if it be a good-faith conclusion. In order that it be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.

"This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. If it exhausts the sources of information open to it to ascertain the facts, it has done all that is possible to secure the knowledge upon which a good-faith judgment may be exercised. But we do not go so far as to say that, in order to characterize its judgment as one of good faith, it is necessary that it should absolutely exhaust all sources of information. We go only so far as to say that it should exercise reasonable diligence in this behalf, which means such diligence as the great majority of persons use in the same or similar circumstances. This is ordinary care. So it seems to us that the statement in the opinion, which is criticised, to the effect that a good-faith decision on

the part of the insurance company upon the question of settlement must be preceded by the exercise of that degree of care and diligence which a man of ordinary care and prudence would exercise in the investigation and adjustment of claims, states the duty devolving upon the insurer, just as we declare it to be.

"In addition to this a further duty plainly devolves on the insurer. After it has made an investigation of the accident and the injury, and faces the probability that a recovery will exceed the indemnity, it plainly becomes the duty of the insurer to indicate such fact to the insured, to the end that he may take such steps as may be open to him for his own protection. What his rights in this respect are, we do not find it necessary now to decide, for reasons which will hereinafter appear. The company owes this duty to the insured because it has taken over all of the rights which formerly belonged to the insured, which could be exercised by him to place him in possession of the facts suggesting the possibility or probability of a recovery beyond the limit of the indemnity. Because the contract takes away these rights from the insured and transfers them to the insurer, the insurer owes to the insured the implied duty to so exercise them as to discover the possible extent of the liability and to communicate such fact to the insured.

" . . .

"We can see no room to quibble upon the proposition that the insurer made an inadequate, a careless, if not shiftless, investigation of the facts with reference to the accident and injury, that it never at any time was in position to exercise a sound or good-faith judgment, and that in none of these respects did it meet the duty which it owed to the plaintiff. As a result of its dereliction in these respects, it never in good faith determined for itself whether the claim should be compromised or settled, nor did it place the insured in possession of facts suggesting liability on his part

which would enable him to take any steps to protect himself. As a result of our consideration, we entertain no doubt that the mandate in this case is correct, and it is now confirmed.''

■ A number of the cases cited follow the rule adopted by the New Hampshire Supreme court (see *Cavanaugh Bros. v. Gen. Acc. Fire & Life Assur. Corp.*, 79 N. H. 186, 187; *Douglas v. United States Fid. & Guar. Co.*, 81 N. H. 371, 379), that when the insurer under the policy assumes the conduct of the defense of a case brought against the insured, the insurer in carrying on negotiations for a settlement is held to the duty of doing what the average man would do in a similar situation.

■ It would unduly extend this lengthy opinion to analyze many other cases cited by both parties. In our judgment, the weight of authority supports the rule that the insurer cannot be held liable for refusing to settle a case before or during trial·for an amount within the limits of its liability under the policy although such refusal may result in a judgment against the assured for an amount in excess of the liability of the insurer, in the absence of fraud, negligence or bad faith. In *Johnson v. Hardware Mut. Casualty Co., supra,* 108 Vt. 269, the Vermont Supreme court aptly states (p. 286): ''What showing is necessary to make out a case of bad faith on the part of an insurer in refusing or failing to settle a case for an amount within the policy limit is a question that has troubled the courts.'' The court in that case held, as we have heretofore stated, that the attorneys and an adjuster for the insurance company insuring defendant in an automobile accident case were agents of the company in the trial and *negotiations for settlement,* so that their acts, so far as authorized, were the acts of the company. The court also held that a refusal of the home office of defendant company to accept the proposition of settlement within policy limits, standing alone, was

not sufficient to sustain a charge of bad faith, but where persistently maintained against advice of its counsel in charge of the case and its adjuster present at the trial, who were fully cognizant of the situation, were circumstances sufficient to warrant an inference that requisite good faith was not exercised.

■ Observing the rules that govern a trial court in passing upon a motion to direct a verdict, we find evidence tending to prove that at the time the offer to settle for $8,000 was made and refused defendant's agent, Hinshaw, had heard the evidence that was produced upon the trial, knew that a verdict had been found against the insured for $20,000 and that the trial court had approved the verdict; that a considerable time thereafter he recommended to defendant's claim agent that the offer to settle for $8,000 should be accepted, that said agent refused to accept the offer, and defendant never offered any amount in settlement of Mrs. Halladay's claim or judgment. We also find evidence that at the opening of the trial Mrs. Halladay's attorney made an offer to Hinshaw to compromise her case for $3,500 and that Hinshaw submitted the offer to the claim agent of defendant, who declined to accept it; that during the trial the trial judge called the attorneys into his chambers, where Roemer told the judge that they were willing to take $3,500 in settlement of the case, and that Hinshaw then said that he had discussed the settlement repeatedly with his client "and had not been able to do anything with them." The letter written by Hinshaw on October 2, 1937, to defendant, was offered in defense to rebut plaintiff's evidence that defendant acted in bad faith toward plaintiff, and therefore it cannot be considered in passing upon the instant contention of defendant. It may be noted, however, that that letter was written the day after Judge Frankhauser denied defendant's motion for a new trial; this was a long time before the offer to settle for $8,000 was made. Furthermore, in Hinshaw's letter he does not state

that defendant had a meritorious defense to the claim of Mrs. Halladay. He states: "I . . . am of the opinion that there are at least four reversible errors in the record." After giving careful consideration to the evidence that we are allowed to consider upon the instant contention, and the law that bears upon it, we have reached the conclusion that plaintiff made out a *prima facie* case that defendant did not act in good faith toward plaintiff when it refused to settle the judgment for $20,000 for $8,000, and that the trial court did not err in refusing to direct a verdict for defendant.

Defendant contends that the verdict is manifestly against the weight of the evidence and that the trial court committed reversible error in denying its motion for a new trial. This contention has been argued with some force, but in our view of the next contention raised by defendant, it is only necessary for us to state that upon the question of good faith of defendant there is evidence *pro* and *con.*

Defendant strenuously contends that the trial court committed reversible error in giving plaintiff's instruction "Nos. 3–4." This instruction covers three pages in the abstract. While the case was submitted to the jury on counts one, two, five and six of plaintiff's amended complaint, the instruction commences: "It is alleged in Plaintiff's Amended Complaint". Then follows what purports to be a full and complete recital of the substantial averments of the amended complaint. The instruction concludes as follows:

"It is further alleged that it was the duty of defendant to exercise good faith toward plaintiff in the defense and settlement of said suit *and when defendant*

"(A) Arbitrarily and unreasonably refused to compromise said pending case for the sum of Thirty-five Hundred Dollars ($3500.00);

"(B) Arbitrarily and unreasonably refused to compromise the judgment of Twenty Thousand Dollars

($20,000.00) for the sum of Eight Thousand Dollars ($8,000.00);

''(C) Contrary to the advice of its attorney refused to compromise said pending case for the sum of Thirty-five Hundred Dollars ($3500.00);

''(D) Contrary to the advice of its attorney refused to compromise the judgment for Twenty Thousand Dollars ($20,000.00) for Eight Thousand Dollars ($8,000.00);

*it failed to exercise good faith.*

''You are instructed that if you believe from a pre-ponderance of the evidence, under the instructions of the Court, that plaintiff has proved its case as above set forth and alleged in its Amended Complaint, you should find the issues for plaintiff.'' (Italics ours.)

██ This instruction plainly told the jury that ''when defendant (A) Arbitrarily and unreasonably refused to compromise'', etc., and ''(C) Contrary to the advice of its attorney refused to compromise'', etc., ''it failed to exercise good faith.'' The instruction is a manda-tory one and it clearly assumes that plaintiff proved facts that it was obliged to prove in order to make out a *prima facie* case—facts that were disputed by defend-ant. Moreover, the instruction, in stating that defend-ant failed to exercise good faith when, contrary to the advice of its attorney, it refused to compromise the case, ignores other facts and circumstances in evidence that the jury had a right to consider in determining the question whether or not defendant exercised good faith. The instruction fails to define the terms ''arbi-trary'' and ''unreasonable.'' There is force in the con-tention of defendant, strenuously argued, that the jury-men would assume from the entire instruction that the trial court was directing them to find a verdict for plaintiff. The giving of this instruction constituted reversible error and the trial court erred in denying defendant's motion for a new trial.

The judgment of the Superior court of Cook county is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

SULLIVAN, P. J., and FRIEND, J., concur.