S. L. MOORE, Sr., Plaintiff

v.

COLUMBIA CASUALTY COMPANY, Defendant.

Civ. A. No. 2367.

United States District Court
S. D. Illinois, S. D.
June 29, 1959.

Schaefer O'Neill, Alton, Ill., for plaintiff.

Giffin, Winning, Lindner & Newkirk, Springfield, Ill., Pope & Driemeyer, E. St. Louis, Ill., for defendant.

POOS, District Judge.

This is a suit brought by S. L. Moore, Sr., an insured under a comprehensive personal liability policy, against Columbia Casualty Company, the insurer, seeking to recover an amount paid by the insured in satisfaction of a judgment ob-

tained by one Hilda M. Ruyle against the insured, in excess of the policy limit and for costs, expenses and attorneys' fees.

Suit was originally filed in the City Court of Alton, Madison County, Illinois, and was removed to this Court by reason of diversity of citizenship and the amount involved.

This cause comes on for hearing before the Court upon the complaint and answer, and the defendants' motion for summary judgment under Rule 56, 28 U.S.C.A., supported by the pleadings, depositions, admissions, transcript of testimony in a previous related trial and affidavits. No counter affidavits have been filed by the plaintiff, and therefore the facts, as set forth in the motion for summary judgment and supporting exhibits, are taken as true.

The complaint charges that while the aforeaid insurance policy was in force, one Hilda M. Ruyle claimed to have suffered an injury on the premises of the plaintiff covered by said insurance policy as the result of which she brought an action in the City Court of Alton, against the plaintiff seeking damages of $75,000; that under the terms of said policy, the defendant Company:

(a) "agreed to assume all liability for all legal claims arising under the policy against the insured up to the full amount of the policy;

(b) "contracted for the exclusive right to defend all claims arising against the insured under the coverage of the policy;

(c) "assumed exclusive control of the claim against the plaintiff and took unto itself the power to determine for the plaintiff all questions of liability, settlement, of defense and management before and during the trial;"

That on May 14, 1955, plaintiff delivered a letter to the defendant Company advising it that it was the "desire" of the plaintiff that settlement be negotiated, and that "it was the opinion of the plaintiff that the said case could be settled for an amount well under the $10,000 limit of the policy"; that if it elected to try said cause, plaintiff would accept no responsibility for any judgment returned against him above the limits of the policy and would hold said defendant company liable for any excess amount; that again by letter of May 25, 1955, plaintiff again urged the defendant to negotiate a settlement of said suit; that notwithstanding said requests, the defendant Company failed to exercise good faith toward the plaintiff in that it arbitrarily and unreasonably refused to negotiate settlement within the policy limits; that because of the failure and refusal of the defendant to make settlement within the policy limits, the said Hilda M. Ruyle on January 19, 1956 obtained a judgment against the plaintiff in the amount of $35,000; that although the defendant Company had previously advised plaintiff that it was of the opinion there would be a good chance of reversal of said judgment on appeal, the defendant Company advised the plaintiff that it was going to pay the limits of its policy on the judgment, was not obligated to take an appeal and would not do so, was not obligated to make a bond on appeal, but merely to pay the premium on such bond and that the appeal bond itself would be that of the plaintiff; that thereafter the plaintiff negotiated a settlement of said judgment for the sum of $20,000, of which sum the defendant Company paid $10,000, and the plaintiff was compelled to contribute an additional $10,000; that by reason thereof, he was damaged in the sum of $10,000 plus an additional $5,000 for costs, expenses, attorneys' fees and other monies which the plaintiff had been compelled to expend because of the actions of the defendant.

To the complaint the defendant filed its answer, admitting the issuance of the policy in the limit of $10,000; admitting the rendition of the $35,000 judgment against the plaintiff and the final settlement thereof for $20,000 of which sum the defendant paid its policy limit of $10,000, and the excess in the amount of

$10,000 being paid by the plaintiff; denying the other allegations of the complaint and specifically denying that it ever failed to exercise good faith toward the plaintiff or that said cause could at any time have been settled within the policy limits; and affirmatively alleging that at all relevant times prior to, during, and after the trial of said cause, the plaintiff consistently insisted, both by unsworn statement and by testimony under oath, that the claim of Hilda M. Ruyle was entirely unfounded, had no basis in fact, was pure fabrication, and that the alleged accident had never occurred.

In addition, the defendant filed its motion for summary judgment, supported by appropriate affidavits and other exhibits. No counter-affidavits were filed by plaintiff.

The facts, which are deemed admitted by reason of the plaintiff's failure to file any counter-affidavits, are as follows:

On July 9, 1954, the plaintiff was served with a complaint and summons in an action for $75,000 filed by Hilda M. Ruyle in the City Court of Alton, Illinois, against the plaintiff, alleging that on November 24, 1952, while she was doing her laundry in the basement of Moore's home, Moore was assisting her in moving a heavy chair; that he suddenly dropped his end of the chair resulting in a serious back injury to her. Moore forwarded the complaint and summons to the Insurance Company and advised it that this was the first notice he had of any such claimed accident, and that no such event had ever occurred. The Company employed Frank M. Rain of the firm of Pope & Driemeyer, of East St. Louis, Illinois, who is a well recognized and competent Attorney, to defend the action. It also notified Moore that the suit was in excess of its $10,000 policy limit and that he was at liberty to employ personal counsel of his own choice and at his own expense to look after his individual interests. Moore then employed W. H. Thomas, as such Attorney, and he participated in the preparation for trial, trial of the cause

and settlement negotiations. The Company also made a thorough investigation surrounding the factual situation.

The discovery deposition of Hilda M. Ruyle was taken in which she testified positively under oath to the time and manner in which her accident occurred. The discovery deposition of Moore was then taken and, with knowledge of Ruyle's testimony, Moore positively denied that the accident had even occurred.

On May 14, 1955 Moore wrote the Company, among other things, saying:

"I wish to advise the Columbia Casualty Company of New York by this letter that it is my desire that they negotiate a settlement of this case with the said Hilda M. Ruyle, since I am of the opinion that it could be settled for an amount well under the $10,000.00 limit of the policy.

"If your company elects to try the case rather than make a settlement, please be advised that I will accept no responsibility for any judgment rendered against me in this case above the limits of the policy, and will hold the Columbia Casualty Company of New York, liable for any excess amount.

"If the case goes to trial, I will of course cooperate in every way in the defense of the claim".

Under date of May 17, 1955 the Company replied:

"You state it is your opinion that this case could be settled 'for an amount well under the $10,000.00 limits of the policy'. We have had no indication from the Plaintiff or her Counsel that they would be willing to compromise the litigation for any figure. There has been no settlement demand and Plaintiff's Counsel have made no overtures whatsoever to demonstrate that they might be willing to negotiate. If you have information which you have not disclosed, and which has caused you to conclude that the case

can be settled within the policy limits, or that it should be settled, it is your duty to so advise us without delay. Our Counsel reports that you have consistently taken the position that the Plaintiff is not telling the truth, and that the allegations in her complaint, with respect to the manner in which she claims to have been injured, are fabrications. This same position has been maintained in your conversations with me, and with other representatives of our Company. Under the circumstances, it seems quite inconsistent that you would 'advise the Columbia Casualty Company of New York * * *' that it is my desire that they negotiate a settlement of this case.

"You are hereby notified that the Columbia Casualty Company has worked diligently in the investigation of this case, and that to date, that investigation has not disclosed anything to indicate that you were guilty of a negligent act of omission or commission which proximately caused the Plaintiff's injuries. We must, therefore, conclude that there is absolutely no basis for your position as outlined in your letter of May 14, 1955 "

On May 25, 1955, Moore replied to the Company as follows:

"In reply to your letter of May 17, 1955, I wish to advise that I have not withheld information at any time from the Company or its representatives in regard to this claim. I know that the suit is groundless, and in my opinion the plaintiff is not entitled to recover in this case. The very weakness of the plaintiff's claim should indicate to any practicing Attorney that the case should be settled.

"Your letter further asks for a reason why I desire the Company to negotiate a settlement of this case. I have been in the insurance business in Alton for over thirty-six years,

and litigation against me personally definitely affects my Insurance Agency and volume of business. This suit also appears on every Abstract for real estate in which I have an interest and affects the title until the case is settled.

"For the above reasons, we respectfully urge that an effort be made to negotiate a settlement".

The suit came on for trial on January 17, 1956, and at the trial Ruyle again testified to the occurrence of the accident on November 24, 1952 as above stated. Moore, both when called as an adverse witness under Section 60 of the Civil Practice Act, and when later called as a witness in his own behalf, again positively and unequivocally denied that the alleged accident had even occurred. The jury returned a verdict in favor of Ruyle and against Moore in the amount of $35,000 on which judgment was entered January 19, 1956.

During the trial the Company offered $4,000 in settlement, which was rejected by Ruyle's Attorneys, who made no counter demand.

R. W. Johnston, Superintendent of the St. Louis Office of the Company, supervised and actively participated in the investigation, pretrial preparation, and attended all phases of the trial, during all of which time he was in touch with the Home Office of the Company, prepared to report progress of the trial and any settlement demands which might be received.

Following the adverse verdict, Moore, both personally and through his personal Attorney Thomas, continued to assert that Ruyle's claim was a pure fabrication and that it was based upon perjury.

Defense counsel filed and argued a post trial motion which was overruled. After the hearing on such motion, Moore's individual counsel, Thomas, advised the Company that the $35,000 judgment could be settled for $20,000 of which sum

Moore would contribute $10,000 if the Company would pay its policy limits. This was done and the judgment satisfied.

At no time prior to the hearing on the post trial motion were any settlement demands received from either Ruyle or her Attorneys, and, as a matter of fact, Ruyle had never been willing to accept nor had she authorized her Attorneys to accept less than $25,000 to $30,000 in settlement before the hearing on the post trial motion.

Although the Company felt that there was a good chance of reversal of the judgment on appeal, it had decided not to appeal but to pay its policy limits into Court and thereby relieve itself of any further obligation to Moore. This decision was communicated to Moore shortly after the determination of the post trial motion and prior to receiving the offer on which the settlement was ultimately based. At the same time the Company advised Moore that if he wished to appeal, that matter was entirely up to him, and that he would have to obtain his own appeal bond, although the Company would pay the premium therefor pursuant to the terms of the policy.

Moore now urges that upon the basis of the above facts, his Insurance Company was guilty of bad faith toward him in failing to negotiate a settlement within the policy limits, and that therefore he is entitled to recover from his Insurance Company the excess which he was compelled to pay, together with his expenses, including Attorneys' fees, incurred both in defending that action and in bringing the present action. With this contention we are wholly unable to agree.

It appears that the precise question before us has never been passed upon by the Supreme Court of Illinois. However, the Appellate Court of Illinois, First District, Second Division, in an opinion by Justice Scanlan on May 1, 1945 in Olympia Fields Country Club v. Bankers Indemnity Insurance Co., 325 Ill.App. 649, 60 N.E.2d 896, at page 906, lays down the Illinois Rule in the following language:

"In our judgment, the weight of authority supports the rule that the insurer cannot be held liable for refusing to settle a case before or during trial for an amount within the limits of its liability under the policy although such refusal may result in a judgment against the assured for an amount in excess of the liability of the insurer, in the absence of fraud, negligence or bad faith".

The United States Court of Appeals for the Seventh Circuit on March 31, 1952, in an opinion written by Judge Duffy in Ballard v. Citizens Casualty Company of New York, 196 F.2d 96, which arose under Illinois Law, quotes with approval the above language from the Olympia Fields case. In the absence of a controlling decision from the Supreme Court of Illinois, I hold that to be the law applicable to this case.

It is true that in both the Olympia Fields case and in the Ballard case, the respective Courts found from the particular facts in those cases, that the Insurance Company was guilty of bad faith in refusing to settle within the policy limits. However, both of those cases are easily distinguishable from the case at bar on the factual situation therein involved.

In the Olympia Fields case, at the opening of the trial, plaintiff's counsel offered to settle for $3,500, well within the policy limits, which offer was submitted to the Insurance Company's Claim Agent who declined to accept it. During the trial, and in chambers, plaintiff's counsel told the Judge they were willing to accept $3,500 to which defendant's counsel stated that he had discussed the settlement repeatedly with his client and had not been able to do anything with them. Some time after the $25,000 judgment had been entered, plaintiff's counsel offered to settle the judgment for $8,000, within the policy limits, but this offer was likewise refused, although the insured wrote a letter to the Insurance

Company insisting that such settlement be accepted. Upon the above facts, the Court said: (60 N.E.2d at page 907):

"After giving careful consideration to the evidence that we are allowed to consider upon the instant contention, and the law that bears upon it, we have reached the conclusion that plaintiff made out a prima facie case that defendant did not act in good faith toward plaintiff when it refused to settle the judgment for $20,000 for $8,000, and that the trial court did not err in refusing to direct a verdict for defendant".

In the Dram Shop suit, which preceded the Ballard case, the principal issue was the intoxication of one Farwell. Ballard's personal counsel informed Welch, the Attorney provided by the Insurance Company, that there was a certain waitress, named Margaret Willey who should be interviewed, as she had continued to serve Farwell after another of defendant's witnesses had left the Tavern. Welch failed to interview such waitress until two days before the trial, at which time she refused to talk to him, claiming that plaintiff's Attorney had talked to her first. At the trial, Willey testified that Farwell was intoxicated and that she shut him off and did not give him any more to drink because of his intoxication.

Welch repeatedly assured Ballard that he had nothing to worry about; that "at the most it wouldn't exceed the limits of the policy". Before the trial, a written offer to settle the case for $2,500 (within the policy limits) was delivered to Welch to which offer said Attorney stated that "the Company would not be interested in a settlement of the suit at the face of the policy". Later Ballard's personal Attorney told Welch that there were a number of features of the case which he did not like, such as the fact that the plaintiff had one small child and was pregnant and that there was always danger in this kind of a case before a jury.

During the recess of the trial, Ballard's personal Attorney asked plaintiff's Attorney "why don't you make me a proposition—one that I can get this thing settled—make me one that I can get this thing settled", at which time plaintiff's counsel offered to settle for $2,000. Welch commented that he could not get through to the Company in New York and when Ballard's personal Attorney asked him what he should tell him in reply to the $2,000 offer, he said: "I don't care what you tell him. I am not interested in the settlement". He further stated that if plaintiff got a judgment it would not be over $1,000 or $1,500.

When witness Willey testified as to the intoxication of Farwell, no effort was made by Welch to communicate the settlement offer to the Company and counsel had no authority himself to settle the case.

In holding that the Insurance Company had failed to exercise good faith toward its insured, the Court said: (196 F.2d at page 102)

"The Farwell case had many dangerous possibilities. First of all, under the Illinois Dram Shop Act as it existed on the date of trial, the amount of recovery was not limited, and if other necessary conditions were present, liability could attach if the liquor sold contributed in whole or in part to the intoxication of the person, the result of whose intoxication was the basis of the suit. Also, that the Ballards had sold liquor to Farwell on the night he met his death was undeniable. Farwell was but 26 years of age, and the defendant's attorney should have realized that the sympathies of the jury would in all probability be with the widowed mother of his children. Yet the company never offered to settle, even on the basis of nuisance value, and rebuffed each offer of settlement; the written offer forty days before the date of the trial to

settle for $4,000, to which no reply or counter-offer was made; the written offer three weeks before trial to settle for $2500, to which the attorney for the company replied he was not interested in a settlement for the face of the policy; and the offer made upon the morning of the first day of the trial to settle for $2,000, which was rejected by the defendant's attorney's rather curt statement, 'I am not interested in the settlement'. Even after the case turned 'sour,' the company's attorney did not show any interest in attempting to settle the case, and did not report to the insurance company the rapidly deteriorating situation. We think that under such circumstances a jury question was presented on the issue of good faith in the matter of settlement, and that substantial evidence supports the verdict.

"As to the investigation before trial, defendant's attorney did not interview Waitress Margaret Willey, who on the trial was the plaintiff's key witness, until two days before the trial at which time she would not talk to him because she said she had conferred with Mrs. Farwell's attorney. Her refusal to confer should have been a warning her testimony might prove damaging, as up to then defendant's attorney believed she would testify Farwell was not intoxicated. The jury might well have considered that had the defendant's attorneys exercised due care, the attitude of plaintiff's principal witness could have been discovered at an earlier date, and possibly the other witnesses from the large number present, in the Ballard tavern the evening of Farwell's death could have been summoned to testify. We think a jury question was presented as to whether defendant company and their attorneys exercised good faith in the manner of

investigation, and again substantial evidence supports the verdict".

■ In the case at bar, it will be noted that no offer to settle within the policy limits was ever communicated to the Insurance Company's counsel at any time either before, during or after the trial. Although Moore stated in his letter to the Company that he was of the "opinion" the case could be settled within the policy limits, there was no evidence that it could have been. During trial of the case, defendant's counsel offered $4,000 in settlement, which offer was promptly rejected and no counter demand made. At no time prior to the determination of the post trial motion was Ruyle ever willing to accept less than $25,000 to $30,000 and at no time prior to that did she ever authorize her Attorneys to accept any lesser amount. A representative of the Insurance Company was present throughout the trial, in touch with his home office and ready to pass on any settlement demands which might be made, but none were received. Where there is no opportunity to settle within the policy limits, I fail to see how the insurance company could be guilty of a lack of bad faith, fraud, or negligence in failing to settle within the policy limits.

It should also be noted that Moore never reported any such alleged accident until he was served with summons; that thereafter, he repeatedly and consistently, both orally, by written statement, and by testimony under oath on three occasions, insisted that the alleged accident out of which the suit arose, had never even occurred; that he continued, even after the entry of the judgment, to insist that Ruyle's claim was a pure fabrication and based on perjury. Thorough investigation by the Company had shown that there were no eye witnesses to the alleged accident and that it was solely the word of Ruyle against that of Moore. Where the insured consistently insists that the accident never even occurred and nothing turns up as the result of a complete investigation to show to the con-

trary, other than the unsupported word of the plaintiff herself, I fail to see how the Insurance Company can be guilty of bad faith or negligence or fraud in refusing to settle the case, even if there had been an opportunity to settle the same within the policy limits. I cannot conceive of a stronger case for holding that the defendant Insurance Company exercised good faith towards its insured.

When the adverse verdict was received, the Insurance Company had the right to elect not to appeal and to fully discharge its obligation by paying its policy limit to the Clerk of the Court. Under the express terms of its policy, in addition to the policy limits, it agreed to pay

"all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish any such bonds."

Moore had the right to himself perfect an appeal if he saw fit to do so, in which event it would be up to him to provide the appeal bond, the only obligation of the Insurance Company being to pay the premium therefor.

I therefore hold that upon consideration of the pleadings, the motion for summary judgment and the exhibits in support thereof, and in the absence of counter affidavits from the plaintiff, there is no genuine issue as to any material fact in this case; that the plaintiff has wholly failed to present any evidence indicating that the defendant was guilty of any bad faith, negligence or fraud, or that the defendant in any respect failed to exercise good faith toward plaintiff; that the undisputed facts show that in all respects the defendant insurance company exercised good faith toward its insured, Moore; that the defendant is entitled to a judgment in bar of the plaintiff's action and for costs and have execution therefor.

Counsel for the defendant is directed to prepare and present Findings of Fact, Conclusions of Law and a Judgment Order consistent with the foregoing opinion.