**JOHN MOHR & SONS, an Illinois corporation (and successor to Mohr Building Corporation), and GMR Associates, Inc., an Illinois corporation, Plaintiffs,**

v.

**HANOVER INSURANCE COMPANY, a corporation, Defendant.**

**No. 70 C 426.**

United States District Court, N. D. Illinois, E. D.

Jan. 15, 1971.

William J. O'Brien and Edward Atlas, Chicago, Ill., for plaintiffs.

John Moelmann and Perry Fuller, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

MAROVITZ, District Judge.

This is an action by two Illinois corporations, John Mohr & Sons (JM), and

GMR Associates, Inc. (GMR), against Hanover Insurance Company (Hanover), a New York corporation, alleging that Hanover breached its contract to defend and indemnify both plaintiffs. Defendant has filed a motion to dismiss JM and another separate motion to dismiss both plaintiffs. Plaintiffs have filed a joint cross-motion for summary judgment.

The essential facts are undisputed. In February, 1962, Mohr Building Company (MBC), a general contractor, contracted with Freightways Terminal Company (Freightways) to construct a motor carrier freight terminal building in Chicago, Illinois. Subsequently, in October, 1962, MBC employed GMR to do paving work, including excavation, grading and preparation of the soil, and installation and laying of paving, in connection with the terminal project. As part of its contract with MBC, GMR agreed to indemnify MBC as follows:

"Subcontractor (GMR), by reason of this purchase order, hereby assume the entire and full responsibility and liability for any and all damages, injury, loss and expense of any kind or nature whatsoever to all persons, whether employees or others, and to all property, arising out of or in any manner resulting from the execution of the work provided for in this contract and work incidental thṙeto, or occurring in connection therewith, whether the same arises from negligence or otherwise, even though such damages * * * are attributable to the joint, concurrent or contributory negligence of Mohr Building Corporation, its agents, servants and employees and agrees to indemnify, save harmless and defend Mohr Building Corporation, its agents, servants, and employees from and against any and all such damages, injury, loss and expenses, including attorney's fees and expense of litigation arising out of or in any manner resulting from or occurring in connection with the execution of the work herein provided for

and work incidental thereto or occurring in connection with or resulting from the use of sub-contractor's subcontractors, agents or employees or others, of any material, tools, implements, appliances, scaffolding, ways, condition of premises, works or machinery or other personal or real property of Mohr Building Corporation, whether any claims resulting in any such damages, injury, loss or expense arise under the common law or under any applicable Workmen's Compensation Law or other statute or otherwise."

Pursuant to its agreement with MBC, GMR obtained general comprehensive liability insurance from Hanover for the contractual indemnity liability which GMR had assumed in its contract with MBC. Ultimately, Hanover agreed to provide the following coverage:

*Coverage B—Property Damage Liability*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

*Coverage Z—Contractual Property Damage Liability*

"To pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any written contract designated in the schedule below, shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The pertinent schedule then listed the designated contract as that subcontract between MBC and GMR for the Freightways Terminal building, and recited GMR's obligations to indemnify MBC.

The policy also contained some exclusions from these, and other, broad statements of coverage. Exclusion (j) to

Coverage B clearly indicated that the policy did not apply:

"to injury or destruction of any property arising out of * * * (2) the collapse of or structural injury to any building or structure due to (a) grading of land, excavating, borrowing, filling [or] back-filling * * * or removal or rebuilding of any structural support thereof: provided, however, this exclusion does not apply with respect to liability assumed by the insured under any contract covered by this policy * * * and provided further that part 2 of this exclusion [Structural Injury Damage]" is inapplicable if such operations are covered in the declaration.

Excluded from Coverage Z, by virtue of Exclusion (h), was:

"injury to or destruction of any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises."

Between October, 1962, and the Spring of 1963, GMR prepared and laid asphalt paving for the Freightways project, but the paving began to break down before GMR completed its work. Ultimately, Freightways sued JM and MBC in the United States District Court, N.D.Ill., Case No. 64 C 874, alleging that defendants breached their contract by unskillfully and negligently performing the paving work with improper materials. JM denied the alleged negligence, counter-claimed against Freightways, and also filed a third-party complaint against GMR, alleging negligences and relying on GMR's agreement of indemnity to protect JM against any judgment resulting from Freightways' suit.

JM and GMR notified Hanover of this action, demanding that Hanover assume the defense of the cause. Hanover refused. Subsequently JM settled its dispute with Freightways, sustaining damages, trial expenses and attorneys' fees. GMR sustained similar losses.

Finally, JM and GMR settled their dispute.

■ Plaintiffs bring the instant action in order to recover their losses allegedly due to Hanover's refusal to defend the Freightways' suit. Hanover's motions to dismiss are based on its contention that the claim filed against JM was not a claim within the coverage of the policy issued to GMR and that as to JM, the asserted cause of action is barred by a statute of limitations, Ill. Rev.Stat. Ch. 32, § 157.94 (1969). Matter in addition to the pleading has been filed and there are not material factual issues in dispute. Since the only substantive question to be resolved is which side is entitled to prevail as a matter of law, summary judgment is appropriate. Chicago Joint Board, etc. v. Chicago Tribune, 307 F.Supp. 422, 424 (N.D.Ill. 1969).

■ Initially, we find that JM is not barred by statute from bringing this action. Both JM and MBC, a wholly owned subsidiary of JM, were sued by Freightways and tendered their defense to Hanover, which refused both. In May, 1963, MBC was dissolved with its assets and liabilities transferred to JM, which corporation completed work on the Freightways' site. The situation is quite distinct from that where a corporation dissolves leaving no successor to carry on its work or assume its responsibilities, for here there was a successor corporation with a unity of interest and ownership in the dissolved corporation. Edwards v. Chicago and Northwestern Ry. Co., 79 Ill.App. 48, 52–53, 223 N.E. 2d 163 (1967). We find that JM may bring this cause of action against Hanover in its own right and, by operation of law, as subrogee of its subsidiary MBC.

Now all parties have filed lengthy briefs dealing with the scope of Hanover's liability coverage. What has been less emphasized, though it is of primary importance, is the extent of Hanover's duty to defend the Freightways litigation, i. e., Freightways' suit against

MBC, and JM's third party action against GMR.

■ The obligation of the insurer to defend the insured is not the same as its obligation to indemnify the insured. Palmer v. Sunberg, 71 Ill.App.2d 22, 30, 217 N.E.2d 463 (1966). Under Illinois law, applicable here, the former obligation is broader. Stern, Walter & Simmons, Inc. v. Seaboard Sur. Co., 308 F. Supp. 252, 254–255 (N.D.Ill.1970); see Country Mut. Ins. Co. v. Murray, 97 Ill. App.2d 61, 70, 239 N.E.2d 498 (1968).

■■ Essentially, a liability insurer is bound to defend an action stating a claim within the coverage of its policy. Shaw v. Aetna Cas. and Sur. Co., 407 F. 2d 813, 814 (7th Cir. 1969). However,

> "The insurer's duty to defend is predicated not upon information in its possession which indicates or even proves non-coverage. Rather, it is predicated upon the allegations in the complaint in an action brought against the insured and when such allegations state facts which bring the case within, or potentially within, the coverage of the policy, the insurer is from this time on unjustified in not defending the insured." McFadyen v. North River Ins. Co., 62 Ill.App.2d 164, 170–171, 209 N.E.2d 833, 836 (1965).

Any doubt concerning coverage must be resolved in favor of the insured. Stern, Walter & Simmons v. Seaboard Sur. Co., 308 F.Supp. 252, 255 (N.D.Ill.1970); Gulf Ins. Co. v. Dooley, 286 F.Supp. 16, 17 (N.D.Ill.1968). Consequently, for the insurer to be relieved of its obligation to defend, the complaint against the insured must "show, on its face, that it clearly falls outside the provisions of the insurance policy." Id.; see 7A Appleman Ins. Law & Practice § 4683 (1962). Thus, the obligation to defend is determinable and arises, if at all, when the suit is filed. Cf. Fisher v. Hartford Acc. & Indem. Co., 329 F.2d 352, 353 (7th Cir. 1964).

■ It is sufficient under these rules to find that defendant has not demonstrated that the relevant claims were clearly beyond the coverage of the GMR policy when it refused to defend. As noted, Freightways originally sued JM and MBC alleging defendants breached their contract by negligently performing certain paving work. Besides ¶ 10, which was based on negligence and/or contract theories, the Complaint, ¶ 7 alleged the existence of certain warranties about workmanship and materials. Also, as noted, JM's third party complaint against GMR alleged unskillful and negligent work and the use of improper and inadequate materials.

Under its agreement with MBC, GMR had to defend and indemnify MBC for property damage which arose from, was incident to, connected with or grew out of GMR's paving operations even if GMR was not negligent or at fault. Since Freightways' complaint clearly concerned the paving operations, once it was filed, GMR was obligated at least to defend the action, as well as potentially liable for damages.

By virtue of Coverage Z, dealing with contractual property damage liability, Hanover was obligated to pay for property damages for which GMR had assumed responsibility in the latter's agreement with MBC. Consequently, unless subject to an exclusion, Freightways' claim against JM and MBC, which was contractually indemnified by GMR, was within Hanover's Coverage Z.

Hanover's position is that damage to the property on which GMR was working was not covered by virtue of Exclusion (h) to Coverage Z, and that its liability extended not to damage to the insured's property or the quality of its work, but only to injuries to other property and persons.

At least one difficulty with defendant's position is that when, on March 5, 1965, it first refused to assume the defenses to the complaints, the extent of coverage under similar provisions had not been considered by Illinois courts. It was not until December 31, 1969, that an Illinois court held that an exclusion clause similar to (h) precluded coverage under a clause similar to Z. See Con-

sumers Const. Co. v. American Motorists Ins. Co., 118 Ill.App.2d 441, 254 N.E.2d 265 (1969).

Since, at the time Hanover refused its defenses, the issue, which it now asserts with hindsight, was untested and unclear in this jurisdiction, we think that the asserted claims were not clearly out of but still potentially within its coverage.

Even if one accepts the *Consumers* rationale and, in spite of factual differences, finds it applicable to the instant case, at the time of Hanover's refusal, it was certainly arguable that an exclusion as broad as Exclusion (h) rendered the entire policy ambiguous in view of the broad indemnity premise of the contractual liability provision and the operation of Exclusion (j) to Coverage B, which apparently provides coverage for all grading and excavating damage as long as contractual liability coverage was carried (as it was) or paving was specified in the declaration of operations (as it was). In addition, it was at least arguable, and not without some merit, that Exclusion (h) applied only to products liability insurance which GMR specifically excluded in endorsement form G158a; that Exclusion (h), even if applicable, did not exclude all damages initially sought by Freightways, e. g., for interference with business; and that the Exclusion (h) may not have precluded liability for certain kinds of negligence, e. g., failure to discover a defective soil support condition.

It is not sufficient for defendant to state that it would have prevailed on all of these issues. Rather, since the issues are, jointly and individually, at least legally reasonable and supportable, their mere presence belies the notion that Freightways' claims were clearly not covered by the GMR-Hanover policy. We find that the issue of doubt should have been resolved in favor of the insured. If, at that time, Hanover was convinced of the propriety of its position on coverage, for the reasons now asserted or any others, it could have and should have sought a declaratory judgment as to its obligations and rights or defended under a reservation of rights. Palmer v. Sunberg, 71 Ill.App.2d 22, 33, 217 N.E.2d 463 (1966); Sims v. Illinois National Cas. Co. of Springfield, 43 Ill. App.2d 184, 199, 193 N.E.2d 123 (1963).

In addition, both sides have referred to the intent of the parties with respect to various aspects of coverage under this policy. The intent of the parties is not apparent. To the extent that the intent of the parties becomes relevant in construing the policy, we think it at least establishes another element of doubt further precluding defendant from contending that Freightways' claim was definitely outside of the scope of the policy. *Cf.* De Tienne v. S. N. Nielsen Co., 45 Ill.App.2d 231, 233, 195 N.E.2d 240 (1963).

GMR's liability to JM for the reasons alleged in the third party action was, similarly, not clearly uncovered by Hanover. Indeed, this action alleged damages arising out of GMR's paving work thereby also pleading a claim potentially within Coverage B and Z of Hanover's policy.

In sum, the Freightways' claims against JM and MBC and the JM third party action against GMR were at least potentially within the coverage of the Hanover policy at the time Hanover declined to defend the insured and the third-party beneficiaries. Whether or not the asserted claims would have been disproved, if tried, and whether or not the policy actually would have been found to cover the claims, had a declaration been sought, is not for us to decide now. We merely find that when Hanover refused to defend a claim potentially within its coverage, it breached its obligation to defend. Partial summary judgment on the issue of liability is granted to plaintiffs and against defendant.