Lolita Krutsinger, a Minor, Kenneth Krutsinger, a Minor, and Karen Krutsinger, a Minor, by Dolores Krutsinger, Their Mother and Next Friend, Plaintiffs-Appellees, v. Illinois Casualty Company, an Inter-Insurance Exchange, Defendant-Appellant.

## Gen. No. 10,038.

Third District.

May 14, 1956.

Rehearing denied June 28, 1956.

Released for publication June 28, 1956.

Loren E. Murphy, of Monmouth, and Bozeman, Moran & Klockau, of Rock Island, for defendant-appellant; Bernard J. Moran, of Rock Island, of counsel.

John L. Franklin, of Champaign, for plaintiffs-appellees.

PRESIDING JUSTICE HIBBS delivered the opinion of the court.

Plaintiffs, Lolita Krutsinger, Kenneth Krutsinger and Karen Krutsinger, all minors, by Dolores Krutsinger, their mother and next friend, filed a suit in the Circuit Court of Champaign County on June 2, 1953 against certain tavern owners including Mandel Barnett, Mildred Barnett and Norman Barnett, partners doing business as Piccadilly Liquor Store. The complaint alleged that the defendants were subject to the provisions of the Dram Shop Act (Ill. Rev. Stat. 1951, Chap. 43, pars. 94 et seq.); that they violated Sec. 131 thereof by selling liquor to plaintiffs' father, whom they knew to be a habitual drunkard, and Sec. 135 thereof, by causing the intoxication of plaintiffs' father with the result that he was unable to furnish plaintiffs support and maintenance, citing Ill. Rev. Stat. 1951, Chap. 43, pars. 131 and 135. Both actual

and exemplary damages were sought. The Barnetts were duly served with summons, which they turned over to Robert J. Milum, the agent from whom they had purchased their dram shop insurance. He, in turn, mailed the summons to one of the current insurers and on June 25, 1953 notified by letter each of the other insurers who would be involved in the case including Illinois Casualty Company, the defendant in this proceeding, who, though not on the risk at the time of the original lawsuit, had insured the Barnetts for a portion of the time set up in the complaint, to-wit, from September 29, 1951 until July 7, 1952.

On June 29, 1953, an attorney for the Illinois Casualty Company in Moline, Illinois called plaintiffs' attorney at Urbana and received assurances that no default would be taken against the company until he had an opportunity to decide the company's position in the matter. About a week later a copy of the complaint was obtained from the court files by the company, but it did not file an answer thereto on behalf of its insured. An answer was filed, however, for the insureds by their personal attorney.

On February 22, 1954 an attorney for the Illinois Casualty Company was observed in the court room during a hearing in the Circuit Court on a motion in the case. Shortly thereafter negotiations for settlement were started but the Casualty Company did not participate. Instead on March 9, 1954 it instituted an action in the Circuit Court of Rock Island county for a declaratory judgment to define its rights and liabilities under its contract of insurance involved in the dram shop case in Champaign county.

The dram shop case was finally set for trial in Champaign county on April 5, 1954. On March 26, 1954 plaintiffs served notices that they would ask leave of court on March 29th to file an amended complaint *instanter*. On the day in question such leave was granted and the plaintiffs filed an amended complaint

347

limiting their action to Sec. 135 of the Dram Shop Act and omitting any claim for exemplary damages.

All defendants including the Barnetts were ruled to plead by April 1st. An answer was filed on behalf of the Barnetts by their personal attorney.

On April 1st the legal guardian of the plaintiffs, appointed by the County Court of Champaign county, filed a petition in that court setting up the filing of the dram shop case in the Circuit Court of that county and alleged that "practically all of the sales or gifts of alcoholic liquor upon which the plaintiffs rely as having produced permanent losses to their means of support accrued subsequent to October 1, 1951 and prior to July 1, 1952; that during all of that period of time the Illinois Casualty Company . . . was the carrier upon each of the dram shops in question . . . except one." The petition further alleged that the other insurance carriers involved were willing to negotiate a settlement based upon the periods of coverage of their respective contracts, but that the Casualty Company had refused to participate in a common settlement; that the other insurance carriers had offered to contribute $4,800 to any judgment which would be rendered against defendants in the Circuit Court, which sum should be distributed as follows: $1,800 to Karen Krutsinger, $1,600 to Kenneth Krutsinger and $1,400 to Lolita Krutsinger; that said offer was based on the condition that the plaintiffs would agree to look only to the Illinois Casualty Company for the balance of any judgments rendered in their favor by the Circuit Court. The petitioning guardian advised the court that he believed that it was for the best interests of his wards that the settlement offered be accepted and prayed that he be authorized to accept it. On the same day, after an ex parte hearing, the County Court entered an order authorizing the guardian to settle with the other insurance carriers.

On March 31, 1954 attorneys for the Casualty Company wrote the personal attorney for the Barnetts claiming breaches of condition in its policy and declined to defend the dram shop case. On April 1st these same attorneys on behalf of the Casualty Company wrote the Barnetts setting forth the alleged breaches in the conditions of the policy and also notifying them that the company would not defend the dram shop case unless they would execute a nonwaiver agreement preserving these defenses for the company. The letter suggested that the Barnetts would be personally liable for the balance of any judgment in excess of the reported settlement with the other insurance companies and urged them to seek advice from different counsel. The Barnetts' personal attorney called the attorneys for the Casualty Company on April 2nd and informed them that the Barnetts could not sign a nonwaiver agreement because of the terms of their settlement with the other companies.

The dram shop case was tried by the Circuit Court of Champaign county on April 5, 1954 and verdicts were returned in favor of Lolita Krutsinger for $4,000, Kenneth Krutsinger for $4,800 and Karen Krutsinger for $6,000. Judgments were entered on the verdicts and no appeals were taken therefrom. Credits were allowed pursuant to the stipulation and the judgments have been reduced by those amounts. No further proceedings were ever had in the declaratory judgment action in Rock Island county.

The present suit was filed against the Casualty Company in the Circuit Court of Champaign county on May 5, 1954 for the Krutsinger children by their mother and next friend. The complaint describes briefly the previous suit and settlement agreement with the other companies and the verdicts recovered. It seeks to recover the amounts of those verdicts as reduced from amounts received from the other insurance com-

panies. The Company's answer was filed on July 29, 1954, and in addition to denying the allegations of the complaint set up four separate affirmative defenses. Plaintiffs replied and the cause came to trial on January 17, 1955. At the close of all the evidence plaintiffs moved to withdraw from the consideration of the jury the issues raised by the separate defenses in defendant's answer, which motion was allowed. Plaintiffs then moved for a directed verdict. This motion was also allowed and the jury as instructed by the court returned verdicts for $4,300.58 in favor of Karen Krutsinger, $3,223.11 in favor of Kenneth Krutsinger and $2,900 in favor of Lolita Krutsinger. Defendant has appealed to this court.

 Defendant, Illinois Casualty Company, sometimes referred to hereafter as "the Exchange" points out that any defense it has may be asserted against the plaintiffs here since their rights are no greater than those of the Barnetts, the insureds under the policy in question. With this we agree. (Schneider v. Autoist Mut. Ins. Co., 346 Ill. 137.) It insists first that the insureds breached their contract of insurance by failing to personally notify it of the dram shop suit and by failing to deliver to it the summons served upon them. The policy provides: "the insured shall give to the Exchange or to its attorney-in-fact, Blackhawk Incorporated, immediate written notice with full particulars of any acts or occurrences covered thereby, and shall also give like notice of claims for damages on account of such acts or occurrences. If any suit is brought against the insured to recover such damages, the insured shall immediately deliver to the Exchange or to its attorney-in-fact, Blackhawk Incorporated, every summons or other process served upon him." This is a common provision in policies of this type and has been repeatedly approved by the courts of this State. (Meyer v. Iowa Mut. Liability Ins. Co., 240 Ill. App. 431; Heilig v. Continental Casualty Co., 280 Ill. App.

142.) It is a provision, however, that may be waived by the company. (Sandoval Zinc Co. v. New Amsterdam Casualty Co., 235 Ill. 306.) In the case before us it is clear that the Casualty Company had actual notice of the dram shop suit in Champaign county. The Barnetts' agent in Champaign notified it by letter, which it admits receiving; its attorneys obtained a copy of the complaint within a reasonable time after the suit was filed, and were assured that they would be given ample time to file an answer. We do not believe that the Casualty Company can complain because it was notified by the Barnetts' agent rather than by the insureds themselves. The Supreme Court in Simmon v. Iowa Mut. Casualty Co., 3 Ill.2d 318 said at page 322: "Conceding that the insurance company is entitled to reasonable notice to protect its interests, when such notice is given by a person other than the assured is the company then without liability in the event the injured party is entitled to a recovery? We do not feel that such a harsh result should follow, nor that it was in fact intended by the contracting parties. A strict agency is not contemplated." The Circuit Court therefore properly withdrew the issue of notice from the jury.

The Casualty Company also contends that the provision in the above quoted paragraph concerning the summons is a separate and distinct requirement which its insureds fail to meet. Such a provision was so construed in Potter v. Great American Indemnity Co. of New York, 316 Mass. 155, 55 N.E.2d 198, but like any other provision may be waived by subsequent conduct of the parties. In the instant case the Casualty Company was notified of the service of summons upon its insureds and immediately, through its attorney, took steps to ascertain its position in the matter. On its own initiative it obtained a copy of the complaint and sought to protect its interests from a default. Certainly it sustained no injury because of any omission by its

insureds since for a short time at least it took every step it could have been expected to take had it received the summons. Under these circumstances we believe that the Casualty Company waived the failure of its insureds to forward the summons to it. In Korch for Use of Doody v. Indemnity Ins. Co. of North America, 329 Ill. App. 96 the court pointed out that only slight evidence is sufficient to establish a waiver of a provision of this type in an insurance policy. The court therefore properly withdrew this issue from the jury.

■■ The Casualty Company next points out that the policy in question here provided that "The Exchange shall have the exclusive right to contest or settle any of said suits or claims," and further that "The insured shall not except at his own cost, voluntarily make any payment, assume any obligation, incur any expense or settle or pay any claim. In the event of any settlement by the insured or agreement to pay any claim or any part thereof, the Exchange shall be deemed released from all liability in respect to such claims." Again these are common policy provisions and have been repeatedly held valid. (General Accident, Fire & Life Assur. Corp. v. Louisville Home Tel. Co., 175 Ky. 96.) See cases collected in 34 A. L. R. 731, 43 A. L. R. 327, 71 A. L. R. 1467. Such provisions, however, impose duties as well as privileges upon the insurers. The Casualty Company here was notified of the suit and secured a copy of the complaint. On June 29, 1953 its attorney wrote counsel for the plaintiffs in the dram shop case: "I think your suggestion a good one that you furnish me the names of the lawyers who entered an appearance on behalf of each of these defendants so that we may in turn contact them and make our arrangements for sharing the burden of defense. We of course will be willing to sit down with all the parties concerned to see if there is any way of disposing of this matter as soon as we get our bearings and find out something about the nature of the case."

This letter alone indicates that the company did not intend to insist upon "the exclusive right to contest or settle the dram shop case." Unfortunately, however, the defendant did nothing further. It did not file an answer; it rebuffed all invitations to settle the case; it merely sat back and waited. Finally on April 1, 1954 almost a year later it notified its insureds that it did not intend to defend the suit in accordance with the terms of the policy. In the meantime the insured had the alternative of allowing a default judgment to be taken against them which might involve liability in addition to that covered by insurance, or of filing an answer and participating in settlement negotiations and defending the suit. Actually no alternative existed. The pleadings filed by the insureds were necessary because of the Casualty Company's failure to act. The latter could have protected itself by promptly disclaiming any duty to answer or defend, if it felt that no obligation for it to do so remained at that time. Instead it did nothing. Thus it rather than the insureds were guilty of inaction so far as the provisions of the policy now under discussion are concerned. Nor can the insureds be condemned for participating in settlement negotiations with the plaintiffs and other insurance companies. The Barnetts settled only their liability to the plaintiffs in the dram shop case during the time the other companies were on the risk and insulated themselves personally from liability during the time the Casualty Company was on the risk.

The Casualty Company contends, however, that the Barnetts were guilty of fraud and collusion in participating in the settlement negotiations and particularly in agreeing as a part of the settlement to defend the declaratory judgment action brought by the company. It therefore insists that because of this it was relieved of its obligation to defend under the policy. An examination of the proof however does not support this contention. It would appear, instead, that the Bar-

netts, through their attorney, made repeated efforts to induce the Casualty Company to participate in the various conferences that took place. It knew, or with little effort could have learned, what occurred at every step in the proceedings, and by filing a declaratory judgment suit the company assumed an adverse position which the Barnetts were compelled to contest.

We have examined all of the arguments furnished by the Casualty Company supporting its conclusion that its insureds violated the provisions of its policy giving to the company complete and exclusive control of the defense of any suit brought against them. We find, instead, that the company by its inaction waived any rights that they may have reserved therein. While our Supreme Court has not passed on this precise question, courts in many jurisdictions have so held in similar situations. (Krenitsky v. Ludlow Motor Co., 276 App. Div. 511, 96 N.Y.S.2d 102; Witt v. Universal Automobile Ins. Co. (Tex. Civ. App.) 116 S.W.2d 1095.) See also cases collected in A. L. R. notes cited above.

We believe the Circuit Court correctly found, as a matter of law, that no violation of the provisions of the policy now under discussion occurred and properly withdrew the issues involved from the jury.

The Barnetts in their answer to plaintiff's amended complaint in the dram shop case asserted that the cause of action alleged in the complaint was separate and distinct from that alleged in the original complaint and was then barred by the statute of limitations. This issue was again raised by the Casualty Company in this suit. We believe it was without merit. The original complaint in the dram shop case sought to recover under both Secs. 131 and 135 of the Dram Shop Act and prayed for both actual and exemplary damages. The amended complaint sought recovery for actual damages under Sec. 135 which was a part of the cause of action alleged originally. The Circuit Court therefore did not err in holding that the statute

354

of limitations was not a defense. (Geneva Const. Co. v. Martin Transfer & Storage Co., 4 Ill.2d 273.)

■ Plaintiffs and their counsel have complained here of the repeated charges of malfeasance, fraud and collusion made in the Casualty Company's brief and point out that such charges are serious, that they imply stealth and dishonesty and should not be made light. (Mock v. Higgins, 3 Ill.App.2d 281.) Litigants and their attorneys are of course to interpret the evidence in a manner most favorable to their own theory of the case but this cannot excuse the making of rash and intemperate statements.

The judgment of the Circuit Court of Champaign county in withdrawing the various issues from the jury and directing it to return a verdict for the plaintiffs was proper. In view of this we have not passed on the legal sufficiency of the post-trial motions made by the Casualty Company as requested by plaintiffs in their briefs.

The judgment of the Circuit Court of Champaign county is affirmed.

Judgment affirmed.