**Viola Palmer and Clyde Palmer, a Minor, by Viola Palmer, His Mother and Next Friend, Plaintiffs-Appellees, v. Stewart V. Sunberg, Defendant-Appellee, and The Farmers Automobile Insurance Association, Garnishee-Appellant.**

Gen. No. 65–77.

Third District.

May 17, 1966.

Rehearing denied June 29, 1966.

23

Stuart R. Lefstein, of Rock Island, for appellant.

Thomas F. Railsback, of Moline, Lane & Waterman, of Davenport, Iowa, and William Schroder, Jr., of Rock Island, for appellees.

ALLOY, J.

In the cause before us the original action was instituted by plaintiffs Viola Palmer and Clyde Palmer, a minor, by Viola Palmer, his mother and next friend, to recover damages resulting from alleged negligence of defendant, Stewart V. Sunberg in driving a certain automobile. The defendant's insurer, The Farmers Automobile Insurance Association, garnishee-appellant in this cause refused to defend. It appeared that at the time of the accident in question, defendant Stewart V. Sunberg owned title to three automobiles, a 1952 Pontiac Station Wagon, a 1955 Ford, which Sunberg had acquired about 21 days before the accident, and a 1956 Chevrolet, which was specifically described in the automobile liability insurance policy issued by the garnishee company.

The 1955 Ford involved in the accident was considered an "owned automobile" within the meaning of the policy since it had been acquired by Sunberg and notice was given the insurance company of such acquisition within the thirty-day period as set forth in the policy. The policy provided, as is customary in such policies, that it covered only "owned automobiles," which are defined as automobiles described in the policy or acquired subsequent to the issuance of the policy, if, at the time the

25

automobile was acquired, all other passenger automobiles owned by the named insured were insured with the garnishee. It was the contention of the insurance company that the 1955 Ford was acquired subsequent to the date of the policy, at a time when the 1952 Pontiac automobile was "owned" by the named insured and was not insured with the garnishee. As previously indicated, the garnishee-insurance company declined to defend and a default judgment was entered as against defendant Sunberg.

In the trial of the issues with which we are now concerned, the trial court was required to determine, first, whether or not the 1952 Pontiac was to be considered an "owned automobile." Although there was evidence tending to show that the automobile was no longer being used as such but was considered as "junk" and being used for storage alone, the trial court held that such automobile was an "owned automobile." We are not concerned with this issue on review. The trial court, however, found specifically that the claim of coverage by Sunberg was neither fraudulent nor frivolous and that there was a possibility that such 1952 Pontiac could have been considered as a nonowned automobile.

■■ The trial court, on the basic issue presented to this court, found that the garnishee-insurance company did in fact breach its duty to defend Sunberg under the policy and that the finding that the 1952 Pontiac was an "owned automobile" was not determinative of garnishee's liability in this case. It was pointed out that upon notification of the accident, the insurer evidently made an investigation and refused to defend the insured; that it was willing to accept the risks attendant upon such refusal. The court also pointed out that after the insured was defaulted, the insurer was given an additional opportunity to participate in the hearing and protect itself and the insured on the amount of damages which would be assessed. The court observed that from

the record it appeared that the garnishee-insurance company elected to treat its obligation to defend Sunberg and its ultimate liability under the policy as one and the same duty. The court concluded that these are not only distinct liabilities but are determined by separate circumstances; that the policy liability, if not negatived by allegations of the complaint, is determined by facts developed extraneous to the demand made against the insured, while the duty to defend is dependent solely upon the allegations of the complaint.

On appeal in this court, the garnishee-appellant asserts that the court below, having concluded that there was no coverage, erred in holding that there was nevertheless a duty to defend. In support of this conclusion, it is asserted that the court erred in holding that there must be a defense as long as the facts of coverage are not negatived in the complaint and that the rule imposing an obligation to defend should be limited to those cases where the facts determining coverage are also material issues in the original injury lawsuit. It is also asserted that the court erred in holding that a declaratory judgment suit was a proper action for litigating the duty of defense but that a garnishment proceeding after judgment was not.

 In Sims v. Illinois Nat. Cas. Co. of Springfield, 43 Ill App2d 184, 193 NE2d 123, the Appellate Court was confronted with a similar situation. In that case, the insurance company was involved in a garnishment action. It raised as a defense that no coverage was afforded where the injured party was an employee of the insured while such employee was engaged in employment. Plaintiff in that case was in fact an employee of the driver of the vehicle. The complaint, however, did not specify an employer-employee relationship but simply stated that the individual was riding as a "passenger" and alleged that the defendant in that case was negligent in the operation of the vehicle. The company

27

insuring the defendant operator of the vehicle refused to defend the operator of the vehicle, Sims, and he was required to obtain his own counsel, who answered the complaint. Judgment was entered on a verdict in that case as against Sims. The court there pointed out, in an exhaustive opinion, that the insurance company is bound by the terms of the policy to defend the insured against all actions which are brought against him which are based on the allegations in such action within the coverage of the policy even if the allegations of the suit are groundless, false or fraudulent. The court observed that the obligation of the insurance company under such policy provisions required it to defend an action brought against the insured by a third party and that such obligation is determined by the allegations of the complaint in such action. It was also pointed out that the complaint did not show an employer-employee relationship which the insurance company sought to use as a basis for denying coverage. The Appellate Court concluded that if there is potentially a case under which liability might be established within the coverage of the policy, the insurance company is required to defend.

It was pointed out in the Sims case (with reference to an exhaustive annotation in 50 ALR2d 458) that the rule is well settled that, generally speaking, the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party, is to be determined by the allegations of the complaint in such action, and that the insurer's ultimate liability under the policy of insurance is not the criterion to be followed in determining whether or not there exists a duty to defend. It is pointed out in that annotation that the contention is quite frequently made by insurance companies to the effect that the insurer's obligation to defend is limited to cases establishing ultimate liability of the insurer to indemnify the insured, and does not insure unsuccessful

28

or groundless suits. It is stated that this is not a sound contention and that the duty to defend does not depend upon the insurer's liability to pay. As stated in Sims v. Illinois Nat. Cas. Co. of Springfield, supra, at page 192:

"Thus, according to the foregoing, the generally recognized doctrine is that the insurer is under a duty to defend a suit against an insured where the petition or complaint in such suit alleges a state of facts within the coverage of the policy. And while there is some conflict of authority, the majority of decisions of the courts which have passed on the question adhere to the general rule even though the insurer's investigation discloses a conflict between the allegations of the complaint and the actual facts as known to or ascertainable by the insurer. Typical of the latter cases is Lee v. Aetna Cas. & Surety Co., 178 F2d 750 (NY) where the court said:

"This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; . . . and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact "covered." '

"Applying the foregoing to the allegations of the original complaint in the case at bar it is to be noted at the outset that it is our opinion that Ruark's complaint against Sims stated a cause of action. It alleged that Ruark was a 'passenger' in Sims' motor vehicle and that Sims was negligent and that he, Ruark, was exercising due care for his own safety. There is nothing in these allegations that would

suggest an exclusion from coverage under the policy. It may be argued that by the same token these allegations do not negative the possibility that Ruark might be a passenger in the motor vehicle and at the same time be an employee of Sims engaged in his employment. Even in such a situation the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy."

The conclusion of the court that the duty to defend and the duty to indemnify are separate and distinct is clearly established by other precedents cited in the Sims case which we need not repeat at length in this opinion. It is suggested by appellant in this court, on the precedent of Allstate Ins. Co. v. Gleason, 50 Ill App 2d 207, 200 NE2d 383, and Gould v. Country Mut. Cas. Co., 37 Ill App2d 265, 185 NE2d 603, that the rule expressed in the Sims case hereinabove referred to, be limited to those cases where facts of coverage are also a material issue in the original injury lawsuit. In this connection, appellant also refers to the case of Brodek v. Indemnity Ins. Co. of North America, 292 Ill App 363, 11 NE2d 228, in support of its contention that no duty existed to defend the insured Sunberg. We do not view the Brodek case as a precedent supporting the contention of appellant since in that case the allegations of the complaint (declaration) made it evident that no coverage was afforded under the policy. As stated in the Brodek case, at page 384:

"If a plaintiff alleges in his pleadings that he is entitled to recover upon a ground of liability covered by the policy, then of course the defendant's insurance carrier must defend the suit; it cannot avoid that duty by determining upon its own investigation that the ground of liability alleged cannot be substantiated. If the suit is without merit it

is the duty of the insurer to defend and demonstrate that fact to the court or jury."

The court in that case concluded that by looking at the allegations of the declaration, it was evident that no coverage was afforded under the policy.

Similarly, in Allstate Ins. Co. v. Gleason, 50 Ill App2d 207, 200 NE2d 383, the court reiterated that the obligation of an insurer to defend an action brought against its insured is determined by the allegations of the pleading and the insurer's obligation to defend does not depend upon the ultimate outcome of the action. The lower court's declaratory judgment finding on the agency question was premature. The court, however, found that the insurance carrier had a duty to defend. Likewise, Gould v. Country Mut. Cas. Co., 37 Ill App2d 265, 185 NE2d 603, is not a precedent supporting appellant in the instant case. In the Gould case, the insured brought an action against the insurer to recover the amount of a judgment rendered against him which the insurer had refused to defend. The court held that the insurer was conclusively bound by the finding of the judgment in the original action against the insured which the insurer refused to defend, and that the insurer was not entitled to litigate its contention that the insured had perpetrated a criminal act causing death which was within the policy exclusion. The court found that the insurer had breached its duty to defend and under such circumstances, where the insurer wrongfully refuses to defend on the ground that the claim against the insured is not within the coverage of the policy, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages assessed against him as a result of such breach.

On the basis of the precedents, the conclusion of the trial court that there existed a duty on the part of the Farmers Automobile Insurance Company to de-

31

fend the insured Sunberg was proper. Since the insurer breached its contract by refusing to tender a defense to Sunberg, the court concluded the insurer is now estopped from asserting an exclusion under the policy as a defense to coverage and is liable for the judgment rendered against its insured. This is consistent with the conclusion of the court in Sims v. Illinois Nat. Cas. Co., supra, where the court stated, at page 194:

> "The next question that presents itself is—what are the consequences of such a breach of contract? Here again the general rule is stated in 7 Am Jur2d Automobile Ins, Sec 167, as follows:

> " 'By its unjustified refusal to defend an action against the insured, an automobile liability insurer becomes subject to the following new and positive obligations: (1) liability for the amount of the judgment rendered against the insured or of the settlement made by him; (2) liability for the expenses incurred by the insured in defending the suit; (3) liability for any additional damage traceable to its refusal to defend.

> " 'The first and most obvious of these positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any settlement made by the insured of the action brought against him by the injured party.'

> ". . . The insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, i. e., the 'Exclusions' provisions, when it has already breached the contract by violating the provisions inuring to the benefit of the insured, i. e., the defense provisions. In this sense it may properly be said to be estopped."

▇▇▇ In the memorandum opinion in this cause, the trial court specifically found that Sunberg's claim for coverage was neither fraudulent nor frivolous and that there was, in fact, a possibility, based on the record before the court, that the 1952 Pontiac could have been judicially construed as a nonowned automobile. The trial court followed the precedent of Sims v. Illinois Nat. Cas. Co. of Springfield, supra, where the court stated at page 199:

> "In passing it might appear that the result reached announces a harsh rule so far as insurers are concerned. However, all authorities agree that quite often an insurer is faced with a dilemma as to whether to defend or to refuse to defend. In cases of doubt the answer is simple. It can (1) seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights."

▇▇▇ We, therefore, conclude that the trial court properly determined that the garnishee-appellant, by willfully refusing to defend the insured, under the facts in the record, had breached its contract and thereby rendered itself liable for the judgment entered against its insured.

The judgment of the Circuit Court of Rock Island County will, therefore, be affirmed.

Affirmed.

CORYN, P. J. and STOUDER, J., concur.