WILLIAM ELAS, a Minor, by A. T. Elas, his Father and Next Friend, Plaintiff-Appellant, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

Third District   No. 75-140

Opinion filed June 29, 1976.

BARRY, J., specially concurring in part and dissenting in part.

Winstein and Kavensky, of Rock Island, for appellant.

Bozeman, Neighbour & Patton, of Moline, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff, William Elas, a minor, by A. T. Elas, his father and next friend, appeals from the judgment of the Circuit Court of Rock Island County granting a motion for summary judgment in favor of State Farm Mutual Automobile Insurance Company. The lawsuit was instituted as a result of personal injuries suffered by the minor William Elas in an automobile accident in Mercer County when Elas was riding in a car driven by defendant Nancy J. Smith, when the vehicle went off the road and struck a utility pole. Mrs. Smith was taking the Elas boy, her own child, and four other youngsters to a birthday party at the time of the accident.

The automobile involved in the accident was owned by Mrs. Smith's father, Francis Peterson. Plaintiff, by his father and next friend, filed suit against Mrs. Smith and the Petersons for damages. Farmers Automobile Insurance Association (hereinafter called FAIA), insurers of the Peterson automobile, became involved in the litigation. State Farm

Mutual, asserted to be Mrs. Smith's insurer, denied any coverage under its policy and refused to defend Mrs. Smith.

Pursuant to court approval, plaintiff entered into a settlement with Mrs. Smith, the Petersons, and FAIA, whereby FAIA agreed to pay out its policy limit of $20,000, and plaintiff agreed to hold the settling parties harmless against recovery above that amount, reserving all rights against State Farm as Mrs. Smith's insurer. Following this settlement, the cause proceeded to trial without a jury, and the court awarded plaintiff $100,000 in damages. Plaintiff then filed the action now before us for declaratory judgment against State Farm Mutual for determination that State Farm was liable for plaintiff's injuries under the terms of its insurance policy covering Mrs. Smith.

State Farm initially resisted the complaint on the ground that the policy was issued to Stuart Smith, the father-in-law of Nancy Smith, and that Nancy was, therefore, not the insured person under the policy. It appears, however, that the policy was intended to cover Nancy and her husband, and their 1963 Chevrolet, and was placed in Stuart Smith's name at the suggestion of the State Farm agent to keep their premiums low. State Farm does not press this issue on appeal, and for our consideration we assume that Nancy Smith was an insured under the State Farm policy.

State Farm then filed a motion for summary judgment, and argued that the 1964 Mercury owned by the Petersons and involved in the accident was a car "furnished or available for the frequent or regular use" of Nancy Smith and that her operation of the automobile was not covered by the State Farm policy by reason of a clause therein excluding such vehicles. Based on the depositions of Nancy Smith and her parents, the trial court in the instant case determined defendant's assertion to be correct as a matter of law and granted summary judgment. It is from such judgment that plaintiff now appeals to this Court.

There are two basic issues before us on appeal: (1) whether the trial court was correct in holding that Nancy Smith was not covered by the State Farm policy when driving her parent's automobile (which involves an interpretation of the policy provisions and the depositions of the parties, and a second issue which we believe to be dispositive of the issues in the case), and (2) whether or not State Farm had a duty to defend Mrs. Smith, and if it had such duty, what are the consequences of the failure of State Farm to perform that duty.

The liability of State Farm on the policy would be under the portion denominated "Insuring Agreement II" which covers the insured party while operating a nonowned automobile (defined as one other than the named vehicle which is neither owned by, registered in the name of, or furnished or available for the frequent or regular use of the insured).

Under the term of "Coverages A and B," incorporated by reference in Insuring Agreement II, State Farm obligates itself to defend the insured in any litigation alleging bodily injury caused by the insured's operation of a nonowned automobile.

■■ The courts of this State have determined that the liability insurer's duty to defend a suit in such case is determined by the allegations of the complaint. If the complaint states facts which bring the claim potentially within the coverage of the policy, the insurer is obligated to defend. It can safely and justifiably refuse to defend only when the allegations of the complaint clearly show that the claim is beyond the policy coverage. When an insurer unjustifiably refuses to afford a defense for the insured, it is later estopped from raising the defense of noncoverage in a suit against it to enforce a judgment against the insured. *Palmer v. Sunberg* (3rd Dist. 1966), 71 Ill. App. 2d 22, 217 N.E.2d 463; *Tiffiny Decorating Co. v. General Accident Fire & Life Assurance Corp.* (1st Dist. 1973), 12 Ill. App. 3d 597, 299 N.E.2d 378; *McFadyen v. North River Insurance Co.* (2d Dist. 1965), 62 Ill. App. 2d 164, 209 N.E.2d 833; *Sims v. Illinois National Casualty* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.

This rule has been recognized by the Supreme Court of this State recently in cases where its validity and application were not challenged by the parties. *Weiss v. Bituminous Casualty Co.* (1974), 59 Ill. 2d 165, 169, 319 N.E.2d 491; *Wheeler v. Aetna Casualty and Surety Co.* (1974), 57 Ill. 2d 184, 187-188, 311 N.E.2d 134; see also 7A Appleman, Insurance Law and Practice, §§4683, 4686, 4690 (1962).

Plaintiff thus takes the position that, by its refusal to defend, State Farm has estopped itself from now claiming that the injuries suffered in the accident were not covered by Mrs. Smith's policy. State Farm responds that its non-owned automobile coverage is only excess insurance and the FAIA, as primary insurer of the Peterson vehicle, had the obligation to defend Mrs. Smith, which it did. *Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.* (1971), 49 Ill. 2d 108, 273 N.E.2d 360; *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665. See also the discussion in *Putnam v. New Amsterdam Casualty Co.* (1st Dist. 1969), 110 Ill. App. 2d 103, 249 N.E.2d 159, *aff'd*, 48 Ill. 2d 71 (1970).

■■ As plaintiff points out, however, defendant's cited cases hold only that the primary insurer has the *primary*, not sole, duty to defend. After State Farm's initial refusal to defend Nancy Smith, and following the settlement between plaintiff and FAIA, FAIA informed State Farm that it had agreed to pay off its full policy limit and again requested, together with Nancy Smith, that State Farm undertake or participate in any further defense. It was clear at this point, that FAIA had paid in full and that any further recovery would be sought against State Farm as the excess insurer. State Farm thus had effectively become a primary insurer, and we

conclude that the duty to defend thereafter could no longer be avoided by State Farm and solely imposed upon FAIA. State Farm at this time also had an opportunity to clearly protect its own interest.

Defendant State Farm further argues that the plaintiff could not settle with the insured and covenant not to sue her, and then hold a sham trial to establish further damages which are then sought to be recovered from the insurer. (We should say parenthetically that a trial, jury-waived, before the trial court could hardly be denominated a "sham trial".) The agreement, however, among plaintiff, Mrs. Smith and the Petersons and FAIA was not that plaintiff would not sue. It was an agreement that plaintiff would not seek to execute any judgment recovered against those particular defendants, but rather would execute only as against State Farm which carried excess coverage. It was a covenant insulating the assets of the insured parties and of FAIA from the judgment which might be recovered, with the exception of $20,000 which FAIA had agreed to pay. Rights against State Farm were expressly reserved.

Ample authority exists holding that when an insurer refuses to defend the suit against its insured, the insured may settle with other parties in the case and protect himself or herself against further liability without waiving the insured's rights or the rights of the injured plaintiff to continue the proceedings against the insurer. *De Luxe Motor Stages v. Hartford Accident & Indemnity* (1st Dist. 1967), 88 Ill. App. 2d 188, 193, 232 N.E.2d 141; *Krutsinger v. Illinois Casualty Co.* (1956), 10 Ill. App. 2d 344, 135 N.E.2d 180, *aff'd*, 10 Ill. 2d 518, 527, 141 N.E.2d 16 (1957); 7A *Appleman*, §4690, at 492, and §4714, at 591-592.

Defendant cites *Childress v. State Farm Mutual Automobile Insurance Co.* (4th Dist. 1968), 97 Ill. App. 2d 112, 239 N.E.2d 492, as authority to the contrary. The rationale of that case may seem obscure, but the court there seems to rely principally on the asserted fact that there was no contractual relationship between the insured and the insurer. Be that as it may, there was clearly a contractual relationship in the case before us, and we do not believe that *Childress* is convincing authority in face of the general rule to which we have referred in this opinion.

■■ We thus conclude that State Farm's continued refusal to defend, or participate in the defense of, Mrs. Smith entitled her and the original primary insurer, to make a partial settlement of the case and protect their own interests without waiving the rights of Mrs. Smith or of the plaintiff to establish liability and damages, and proceed against the excess insurer, State Farm. Once State Farm again refused to defend or participate in the defense, even after notice that FAIA intended to settle for the full amount of its policy, it had apparently breached its duty to participate in the defense as set forth in the policy itself. Defendant does not argue that the complaint by plaintiff in the original damage suit against Mrs. Smith does

not set forth a claim potentially within the policy coverage, nor does it argue that the complaint on its face clearly shows the claim to be outside the policy coverage.

■■■ By breaching its duty to participate in the defense, the insurer rendered itself liable for the judgment entered against the insured, if there were no other modifying factors. (*Palmer v. Sunberg* (3rd Dist. 1966), 71 Ill. App. 2d 22, 33, 217 N.E.2d 463.) Though some authorities indicate that the insurer could be liable for the entire judgment even if it exceeds the policy limits, we believe that such rule should apply only when the insured has suffered, or potentially might suffer, actual damages in such amount, or (if arrangements are made reserving rights against the insurer), to the extent that rights are reserved as against the insurer. In the cause before us, since Mrs. Smith has insulated her assets from the judgment, by agreement with Elas, we believe that State Farm should be liable only in the amount of its policy limits of $30,000, upon which plaintiff and Mrs. Smith relied in making the settlement. The result announced here (limiting recovery to the amount of policy coverage) would apply only in cases where facts exist, as in the present case, involving a settlement reliance upon a specific amount of supplementary insurance by an insurer, who wrongfully refuses to defend. We should also note that no issue of payment of attorney's fees and expenses incurred by the insured or others is presented here, and, therefore, nothing herein contained should operate to limit the right of the insured to recover costs and expenses of conducting a defense, even though such sums will be required to be paid by the insuring company beyond its policy limits.

■■ As pointed out in the *Sims* case (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123), and observed again in *Palmer v. Sunberg*, the insurer is not left without an opportunity to assert noncoverage since it may defend on the reservation of rights (if the insured will agree to such reservation) or the insurer may seek a declaration of its rights and duties in a separate declaratory judgment action before or pending trial of the original action instituted by plaintiff against the insured. State Farm did neither. It refused to participate in the defense and disposition of the case and did not take action to establish noncoverage by declaratory judgment. It thus had its opportunity to assert noncoverage. On the basis of the ruling requiring participation in a defense by an insurer under penalty of not thereafter being able to raise the issue of noncoverage, defendant State Farm may not, after trial of the damage case, raise the issue of noncoverage in defense in the instant case. The rule to which we have referred has been deemed by the courts of many states to be essential in protecting insured people from arbitrary rejection of participation in defense by insurers.

We conclude that the trial court erred in granting defendant's motion for summary judgment, where the motion was based on a claim of noncoverage following defendant's refusal to participate in the defense of Mrs. Smith, since the complaint showed that plaintiff's action was ostensibly within the coverage of the policy.

The judgment of the Rock Island County Circuit Court is, therefore, reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STOUDER, J., concurs.

Mr. JUSTICE BARRY, specially concurring in part and dissenting in part:

I agree with the majority that State Farm should be burdened with this liability; however, I do so following the guidelines of the landmark case of *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.*, 325 Ill. App. 649, 60 N.E.2d 896 (1st Dist. 1945), and followed by a 1966 case in our district, *Palmer v. Sunberg*, 71 Ill. App. 2d 22, 217 N.E.2d 463. I also agree that there is no need for us to consider as an issue whether the trial court was correct in holding that Nancy Smith was not covered by the State Farm policy. (Parenthetically, however, it should be noted that the State Farm policy intended to cover Nancy was issued to her father-in-law, Stuart Smith, "at the suggestion of the State Farm agent * * *," who may have in fact been a State Farm employee.) I find nothing in the record however that allows the majority to draw the unjustified conclusion that the plaintiff and Mrs. Smith relied upon a specific amount in making the settlement, that is the State Farm policy limits of $30,000. It may well be that the plaintiff would have settled for that amount prior to judgment, but the fact is the court found the damages were in the amount of $100,000.

In *Palmer*, at page 27, it is clearly expressed that the duty to defend and the ultimate liability of the insurer are distinct obligations. The majority has made it abundantly apparent that we may consider State Farm to have definitely breached its duty to defend and State Farm does not deny in this court that the plaintiff's claim set forth a potential claim within its policy's coverage. That duty cannot be wrongfully avoided or refused "[e]ven if the allegations of the suit are groundless * * *." (*Palmer*, at 28.) Therefore we cannot consider whether State Farm would have been relieved of responsibility. State Farm is estopped from raising a defense of non-coverage and must accept the responsibilities of the consequence of that refusal. As said by the majority, "State Farm thus had effectively

become a primary insurer * * *," and in *Palmer*, at page 32, it is stated: "Since the insurer breached its contract by refusing to tender a defense to Sunberg, the court concluded the insurer is now estopped from asserting an exclusion under the policy as a defense to coverage and is liable for *the judgment* rendered against its insured." (Emphasis added.)

I am now compelled to give detailed consideration to *Childress v. State Farm Mutual Automobile Insurance Co.*, 97 Ill. App. 2d 112, 239 N.E.2d 492 (1968), which the defendant cites as its primary authority. Contrary to the instant case wherein the injured party is the plaintiff, Gerald Childress, through whom coverage was sought, was the plaintiff, and was deceased. The injured parties as 1962 judgment creditors, filed a petition to intervene as parties plaintiff at the hearing of the Childress' (estate) motion to reconsider summary judgment previously granted the defendant in response to a third amended complaint; the trial court denied the intervention as being untimely, as it was filed five years after the commencement of the original action. The 1962 judgment was a *default judgment*, entered against the Childresses for $750,000. Fault liability was questionable in that Jack, son of Gerald Childress and driver of the Childress car, was paid $4,000 by the insurance carrier insuring the other car involved in the accident. There was no allegation that State Farm insured the Childress car involved; Gerald, as owner of another car not involved in the accident had only that other car insured by State Farm. Most significantly non-waivers of the Childresses, reserving the right to deny coverage were requested by and granted to State Farm. Of ultimate and distinguishing significance is the stated holding at pages 120-121 in *Childress*, to the effect that the trial court was affirmed for two reasons: *The lack of any contractual duty from the defendant to plaintiff, and* the covenant insulating the plaintiff from all damages.

*There is no lack of contractual duty in the instant case.* (See *Krutsinger v. Illinois Casualty Company*, 10 Ill. App. 2d 344, 135 N.E.2d 180 (3d Dist. 1956), *aff'd*, 10 Ill. 2d 518, 141 N.E.2d 16 (1957).) Obviously for this important reason, *Childress* is very distinguishable. It should also be specially noted that in the instant case William Elas is not one seeking coverage or protection under a policy. Morover, there was a default in *Childress* so that as a party plaintiff he was apparently not burdened with any cost of defense, while the insured here was exposed to such expense.

The posture of the case before us suggests the pivotal issue to be the question of the rights of the injured plaintiff, William Elas, acquired from the insured by virtue of the settlement and judgment. Under the pertinent facts here, that is an absolute refusal to defend and participate, should those rights be limited to only the limits of coverage purchased by Nancy Smith's father-in-law for her, and perhaps the costs of defense? A fair reading of the words of the settlement would suggest that it was not a

hold harmless agreement, but an assignment, that it was intended that the injured party acquire all of the rights, including future rights, of insured Nancy Smith against State Farm as they were expressly reserved. The insured thereby insulated herself from liability and execution by plaintiff, and by the same settlement insured and plaintiff were aware not only of the possibility of holding defendant insurance company liable for at least its policy limits, but also of the possibility of any and all liability of defendant to the insured and, ultimately plaintiff by the settlement, for a judgment in excess of policy limits on the cause of action acquired against defendant for its wrongful breach of its affirmative duty to defend the insured.[1]

The consequences of the breach of contract by failing to defend are stated in 7 Am. Jur. 2d *Automobile Insurance* §167 (1963), as follows:

"§167.—New and positive obligations of insurer as result of unjustified refusal.

By its unjustified refusal to defend an action against the insured, an automobile liability insurer becomes subject to the following new and positive obligations: (1) *liability for the amount of the judgment* rendered against the insured *or of the settlement* made by him; (2) *liability for the expenses incurred* by the insured in defending the suit; (3) *liability for any additional damage traceable to its refusal to defend.*

The first and most obvious of these positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of *the judgment* rendered against the insured *or of any settlement made by the insured* of the action brought against him by the insured party." (Emphasis added.)

In my view the insured buys all of the rights of "insulation" coverage and "any additional damage traceable * * *" thereto, and here, subsequent to the breach, the insured assigned all of those rights resulting from the breach to the plaintiff. The damages resulting from such breach may not be inconsequential. I do not believe it is too far fetched to assume that the pressure of the possibility of losing one's home, or world possessions otherwise, or health, by virtue of a refusal of coverage could be very real. Perhaps I should again note here that in *Childress* there was a default and therefore no cost of defense of which the court was made aware.

I do not agree with the majority that a settlement acts as a bar against recovery of damages in excess of limits of coverage, that is against the company paying the entire judgment award. The text of 7 Am. Jur. 2d *Automobile Insurance*, §167 (1963) does not so qualify or limit the "obligation to pay the amount of *the judgment* * * *," nor does *Palmer*,

---

[1] See *Brown v. State Farm Fire & Casualty Corp.*, 33 Ill. App. 3d 889, 338 N.E.2d 427 (3d Dist. 1975).

nor does any *holding* in *Childress*. (Emphasis added.) I view the settlement as not determinative. As indicated by the majority, the cases more than adequately support the right of the insured to protect herself; "the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, * * * when it has already breached the contract by violating the provisions inuring to the benefit of the insured, *i.e.*, the defense provisions. In this instance it may properly be said to be estopped." (*Sims v. Illinois National Casualty Company*, 43 Ill. App. 2d 184, 197, 193 N.E.2d 123, 129.) The court in *Childress*, at 97 Ill. App. 2d 112, 119, 239 N.E.2d 492, 496, recalling its review of authorities in another case stated, "We there determined that the majority view in this country and the sounder rule in justice and logic was that payment or nonpayment of the judgment by the insured and his ability or inability to pay it, whether the insured was living or deceased, was not a condition precedent to recovery or a defense, and need neither be alleged nor proved." By analogy, the same logic should apply to whether there is, or whether there is not, this kind of settlement. Confronted with the absolute refusal of the insurer to participate at a time when settlement negotiations must proceed, it would appear that the insured is confronted with two choices, either to arrange to pay or to commence bankruptcy.

To limit the liability of the defendant to policy limits, plus possibly cost of defense if proven, as does the majority here, establishes a precedent that will burden insureds and reward casualty insurance companies for failure to fulfill their contractural obligations. It gives no consideration to the possibility that the settlement contract may be tested with a finding adverse to the insured,[2] it gives no consideration to the insured who finds the best way out is to pay an extra few hundred or a few thousand dollars for a release or for a covenant, and it could well not be feasible for an insured to initiate an action against the company for whatever that smaller amount might be.

Considering that though this minor's settlement was disclosed, it would seem the position of the majority would encourage collusion and promote an advantage to those avoiding the admission of such settlements in other and future cases. Given the general policy of encouraging settlements, it would seem much more fair and equitable to reach a result that would urge the companies to deal squarely with its insureds in situations of this kind. No doubt State Farm could have settled this case within its limits; on the other hand State Farm has had the use of that money for several years. Given these circumstances it would seem that we would be best off

---

[2] That is, for failure of consideration, to wit, a legal disability as to a right to assign insured's cause of action against its insurer for breach to the injured (judgment creditor) who bargained for such right in its settlement contract.

following *Sims*, where the court stated at page 199, "often an insurer is faced with a dilemma as to whether to defend or to refuse to defend. In cases of doubt the answer is simple. It can (1) seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights." *Neither* was done in this case. In fact State Farm did not even *request* a reservation of rights from the insured, and did not participate at all, though requested to so do both before and after the settlement in question. Obviously we must consider this an arbitrary rejection of participation considering the absolute duty to defend.

As the court said in *Childress*, at page 119, "an insurance company may so conduct itself as to be liable for an *entire judgment* * * * irrespective of its policy limits, where it acts with fraud or with *bad faith* in conducting or *failing to conduct the defense*, investigation, trial or settlement negotiations, or *where it is negligent in these respects*." (Emphasis added.) Given the applicable law, these facts and the obligation of the insurance company as the fiduciary of the policy holder insured, I conclude that the court erred in granting the defendant's motion for summary judgment since the defendant did not here deny that the plaintiff's claim was one potentially within policy coverage, that State Farm should be liable for the entire judgment of $100,000 awarded by the trial court, and as indicated by the majority, nothing herein contained should operate to limit the right of the insured to recover costs and expenses of conducting a defense in addition.