CAY DIVERS, INC.; Do-It-Fluid Watersports, Inc.; M/V CAY DIVER; Ronald Cutler; Howard Wilson

v.

Frederick Charles RAVEN, as Representative of Lloyds of London

Appeal of DO–IT–FLUID WATERSPORTS, INC.

No. 86–3115.

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1986.

Decided Feb. 26, 1987.

Joel H. Holt, (argued), Christiansted, St. Croix, U.S. V.I., for appellant.

Warren B. Cole, (argued), Isherwood, Hunter & Colianni, Christiansted, St. Croix, U.S. V.I., for appellee.

Before SLOVITER, STAPLETON, and ROSENN, Circuit Judges.

1. The District Court of the Virgin Islands had jurisdiction over this matter pursuant to section 22 of the Revised Organic Act of the Virgin Islands, Act of Congress, July 22, 1954, Ch. 558,

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents the dilemma faced by an insured party advised to settle a claim by counsel provided by but not acting in behalf of the liability insurer, who reserves the right to contest coverage. Although the district court declared that there was no coverage for two of the three counts of the underlying action against the insured, because there was a slim possibility of coverage for the third count, the court directed the insurer to defend its insured. The carrier provided counsel under a reservation of rights to contest coverage. When the parties to the primary action entered into an agreement settling all three counts, the insured demanded reimbursement of the entire amount from the insurer. The district court granted the insurer's motion for summary judgment.[1] Because we find nothing in the settlement that in any way compromises the insurer's right under its contract of insurance to defend on the ground of noncoverage, we reverse.

## I.

Do-It-Fluid Watersports, Inc., the plaintiff in this indemnification action, operated an aquatic sports shop on St. Croix, Virgin Islands. It had purchased a one million dollar liability insurance policy with certain underwriters at Lloyds of London (Lloyds), subject to an exclusion for liability arising from swimming, scuba instruction, or diving. The policy contained a clause labeled "Duties of Insured" which read in part:

The Insured shall not make any admission of liability, either before or after any occurrence which could result in a claim for which the Underwriters may be liable. The Insured shall not interfere in any negotiations of the Underwriters for settlement of any legal proceedings in respect of any occurrence for which the Underwriters may be liable under this Certificate, provided however, that in re-

68 Stat. 497; 4 V.I.C. § 32 and 5 V.I.C. § 1261. This court has jurisdiction over this appeal from a final judgment pursuant to 28 U.S.C. § 1291.

spect of any occurrence likely to give rise to a claim under this Certificate, the Insured is obligated to and shall take such steps to protect his and/or the Underwriters' interests as would reasonably be taken in the absence of this or similar insurance.

On January 5, 1982, David Wetherhorn, a novice diver, took a scuba "resort course" conducted by Do-It-Fluid. He and three other people completed introductory training and then went for an ocean dive. Once underwater, Wetherhorn apparently panicked and aborted his dive. The Do-It-Fluid instructor followed Wetherhorn to the surface and instructed him to swim back to the nearby boat while he returned to the other divers, who were waiting below. Wetherhorn was last seen alive swimming toward the boat. His body was found in a reef the next day. An autopsy disclosed a forehead wound but fixed drowning as the cause of death.

Wetherhorn's widow brought a wrongful death action against Do-It-Fluid and the other defendants in the present action. She asserted a claim for breach of a contract to provide "an introductory scuba diving lesson and supervised open water dive," and a claim in tort for Do-It-Fluid's breach of its affirmative duty "to properly instruct, diligently supervise and otherwise exercise reasonable care during the introductory scuba diving lesson and open water dive." A third count, added by amendment, alleged that Wetherhorn's death resulted from a blow to the head received while attempting to board the boat unassisted and that Do-It-Fluid was negligent in failing to provide boarding assistance. The estate sought one million dollars in damages.

Do-It-Fluid and the other defendants filed this action against Lloyds seeking a declaratory judgment stating that there was coverage under the policy and directing Lloyds to defend the primary action. Both sides moved for summary judgment on the question whether Lloyds had a duty under the policy to defend the primary action. The district court held that there was no coverage for any liability on the first two counts. Although it noted "that coverage under the third theory was at best, slim," it ordered Lloyds to defend, reserving judgment on the question of Lloyds' liability for coverage under its insurance contract with Do-It-Fluid.

Lloyds retained attorney Joel Marsh to defend in the primary action even before the entry of partial summary judgment, under a reservation of the right to contest liability. This acceptance of the defense was based on an exchange of letters between Lloyds' corporate attorney and Joel Holt, the attorney engaged by Do-It-Fluid and the other defendants. Lloyds' attorney's letter stated:

I am prepared to recommend to my client that defense counsel be provided in the underlying wrongful death action on the condition that the provision of counsel will not waive the right of the underwriters to contest the duty of indemnification.

Holt's response was the following:

My client [sic] has no objection to Lloyds' hiring another party to defend this action under a reservation of rights situation. This agreement however must include the express understanding that any lawyer retained by Lloyds to defend the case will in fact be representing Cay Diver, et al. and not Lloyds of London. I am sure you understand.

Discovery and trial preparation proceeded for the wrongful death action. On the day of the trial, a settlement agreement was reached, and the court entered a consent judgment in favor of Wetherhorn's widow and estate for $686,815. The claims against the other defendants were dismissed without prejudice. Both Marsh and Holt signed the stipulation.

Do-It-Fluid moved for summary judgment to force Lloyds to indemnify it for the amount of the settlement. Lloyds crossmoved for summary judgment denying coverage and asserting alternatively that it was not liable because the settlement breached the "Duties of Insured" clause of its policy with Do-It-Fluid. The court granted Lloyds' motion and denied Do-It-Fluid's.

## II.

Lloyds argues on appeal that the summary judgment entered in its favor should be affirmed because the settlement entered into by Do-It-Fluid constituted an "admission of liability," without the consent or authorization of the underwriters, and thus directly contravened the "Duties of Insured" clause of the insurance contract. This breach, Lloyds asserts, relieved it of any duty to indemnify. Do-It-Fluid contends that the "Litigation" clause [2] of the policy specifically empowers the attorney named by the underwriter to represent the insurer to control the litigation and settlement negotiations. Lloyds denies that the clause gives the appointed attorney authority to control the litigation, settle the case, and absolute discretion to commit their funds in payment.

We need not tarry long on whether counsel appointed to defend Do-It-Fluid had authority to commit the insurer because there can be no doubt on this record that Marsh, the appointed counsel, acted solely on behalf of the insured and its co-defendants in the underlying action, and not on behalf of Lloyds. The district court found that Attorney Marsh entered into the consent judgment at Do-It-Fluid's behest. Marsh deposed that although his fees were paid by Lloyds, he participated in the stipulation only at the demand of Do-It-Fluid and its codefendants and without the consent or approval of Lloyds. Counsel acting on behalf of Lloyds in this declaratory judgment action entered an appearance and placed an objection to the settlement on the record before the stipulation was entered. The extent of his participation in and control over the settlement negotiation and the resulting stipulation is thus irrelevant to whether the settlement was binding upon Lloyds. As we noted in *C.H. Heist Caribe Corp. v. American Home Assurance Co.,* 640 F.2d 479, 481 (3d Cir.1981), "[i]t is

settled ... that an insurer's obligation to defend an action against the insured is not necessarily coextensive with its obligation to indemnify the insured." The duty to defend is broader than the duty to pay. *United States Fidelity and Guar. Co. v. Louis A. Roser Co.,* 585 F.2d 932, 936 (8th Cir.1978); *Aetna Casualty and Sur. Co. v. Coronet Ins. Co.,* 44 Ill.App.3d 744, 3 Ill. Dec. 371, 374, 358 N.E.2d 914, 917 (1976).

Turning to the "Duties of Insured" clause, it appears that it is that provision under which Do-It-Fluid's action in entering a settlement must be evaluated, specifically the provisions requiring that the Insured "shall not make any admission of liability ... [and] that in respect of any occurrence likely to give rise to a claim under this Certificate, the Insured is obligated to and shall take such steps to protect his and/or the Underwriters' interests as would reasonably be taken in the absence of this or similar insurance." Following the district court's first entry of partial summary judgment, Do-It-Fluid was at high risk of an uninsured judgment on the first two counts, and also at risk for a quite possibly uninsured judgment on Count III.

Although Do-It-Fluid had a contractual duty under the "Duties of Insured" clause to try to reduce liability on the potential claim, it also had the contractual right both to ask Lloyds to defend it in the underlying action and to make the best possible settlement, provided it did not thereby compromise Lloyds' right to deny coverage in Do-It-Fluid's action against Lloyds. If any part of the complaint in the underlying action was arguably within the scope of the insurance coverage, and in light of the court's order Count III was, then the insurer should defend, seeking a declaratory judgment or reserving the right to contest coverage based on facts developed at trial on the merits. *Scherschligt v. Empire*

---

**2.** The "Litigation" clause read in part:

The Underwriters shall have the option of naming the attorneys who shall represent the Insured in the prosecution of [sic] defense of any litigation or negotiations between the Insured and third parties concerning any claim covered by this certificate, and shall have the direction of such litigation or negotiations. If the Insured shall fail or refuse to settle any claim as authorized by the Underwriters, the liability of the Underwriters shall be limited to the amount for which settlement could have been made.

*Fire & Marine Ins. Co.,* 662 F.2d 470, 472 (8th Cir.1981).

■ In the instant case, however, Lloyds chose to defend only by providing the insured with independent counsel, reserving the right to contest coverage.[3] By this action it renounced control of the litigation and thereby thrust the responsibility for the litigation wholly upon the insured and its counsel. Do-It-Fluid had to proceed as best it could with its own defense, although assisted and advised by counsel. Lloyds cannot now complain that Do-It-Fluid breached its obligations under the Litigation Clause of the policy by proceeding to settlement, especially when it has done nothing to compromise Lloyds' reserved right to contest coverage. Do-It-Fluid's forced exercise of control over the underlying litigation may have also benefited Lloyds should coverage be determined to be adverse to it, and the discharge of the responsibility thrust upon Do-It-Fluid may not now be used as a device to deprive it of an opportunity to be heard on the question of coverage.

■ Lloyds is not left without an opportunity to assert and demonstrate non-coverage under the insurance contract, for it may defend in the action for indemnification based on the reservation of rights. *Elas v. State Farm Mut. Auto. Ins. Co.,* 39 Ill.App.3d 944, 352 N.E.2d 60, 63–64 (1976). Lloyds' contention that the indemnity provisions of the policy cannot be invoked because Do-It-Fluid compromised the claim in the underlying action instead of proceeding to trial and judgment has no merit. The prohibition in the policy against settlement of claims without the written consent of the insurer pertains to claims for which liability is assumed under the policy. In this case, however, Lloyds never assumed

liability and a settlement in response to a suit is not a violation of the contract of insurance. *American Fire & Casualty Co. v. Kaplan,* 183 A.2d 914, 915 (D.C. Mun.App.1962).

■ We therefore hold that when a complaint, or a part of it, in an action against an insured is arguably within the scope of the insurance coverage, an insurer's discharge of its duty to defend by providing independent counsel, even though reserving the right to contest coverage, relieves it of control over the litigation, and a reasonable settlement effectuated by the insured does not bar an action for indemnification against the insurer. Accordingly, we reverse the district court's grant of summary judgment in favor of Lloyds.

### III.

■ We now turn to Do-It-Fluid's claim that it was entitled to summary judgment on the indemnification claim. The settlement entered into by Do-It-Fluid was for all three counts of the complaint in the primary action, only one of which was potentially covered under the policy, and there has been no fact-finding proceeding on the dispositive issue, the cause of Wetherhorn's death. We reject each theory advanced by Do-It-Fluid in support of its contention that there is a presumption of coverage precluding Lloyds from defending an indemnification proceeding and that the district court therefore erred in denying Do-It-Fluid's motion for summary judgment.

First, Do-It-Fluid suggests that the participation in the settlement by Marsh, the attorney retained by Lloyds to represent Do-It-Fluid in the wrongful death action, constituted authorization of the settlement by Lloyds. Lloyds denies that it approved

---

**3.** Provision of independent counsel or reimbursement for the insured's choice of counsel and expenses ordinarily fulfills the duty to defend, and is particularly appropriate where, as here, there is a conflict of interest between the insurer and the insured. *Cooper Labs v. International Surplus Lines,* 802 F.2d 667, 675 (3d Cir.1986). *See, e.g., Klein v. Salama,* 545 F.Supp. 175, 179 (E.D.N.Y.1982); *Transamerica Ins. Co. v. Keown,* 451 F.Supp. 397, 405 (D.N.J. 1978); *Thornton v. Paul,* 74 Ill.2d 132, 151–63,

23 Ill.Dec. 541, 549–54, 384 N.E.2d 335, 343–48 (1979). Indeed, where there is a conflict of interest, ethical considerations may even require that the insurer provide independent counsel rather than participate in the defense. *See Public Serv. Mut. Ins. Co. v. Goldfarb,* 53 N.Y.2d 392, 400, 442 N.Y.S.2d 422, 427, 425 N.E.2d 810, 815 (1981); *Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 196–99, 355 N.E.2d 24, 30–31 (1976).

the settlement. Marsh stated by affidavit that he participated in the settlement only upon the direct demands of Do-It-Fluid, and without Lloyds' consent or approval. Despite payment of his legal fees by Lloyds, he averred that he acted only as counsel to Do-It-Fluid and not as counsel for Lloyds. Furthermore, Lloyds' counsel in the present declaratory judgment action entered an appearance and placed an objection to the settlement on the record before the stipulation was entered. Under such circumstances, Lloyds sufficiently preserved its right to contest coverage even though it provided counsel to defend Do-It-Fluid, when it timely asserted its reservation of rights under the policy and thereafter sought a declaratory judgment in its favor. *Stout v. Grain Dealers Mut. Ins. Co.,* 201 F.Supp. 647, 649 (M.D.N.C.), *aff'd,* 307 F.2d 521 (4th Cir.1962).

Second, Do-It-Fluid argues that Lloyds' reservation of the right to contest coverage constituted a denial of coverage precluding the insurer from asserting a breach by the insured as a bar to its duty to indemnify. We have held, however, that providing a defense under reservation of a right to deny coverage as a defense to liability for indemnification does not breach a duty to the insured. *See Draft Sys. Inc. v. Alspach,* 756 F.2d 293, 296 (3d Cir.1985) (applying Pennsylvania law); *McDowell-Wellman Eng'g Co. v. Hartford Accident and Indem. Co.,* 711 F.2d 521, 527 (3d Cir.1983) (applying Ohio law). We see no reason why the same rule and reasoning should not be applied to the Virgin Islands.

Third, Do-It-Fluid contends that if Lloyds did refuse to consent to the settlement, that refusal was in bad faith and thus relieved the insured from any restrictions against negotiating a reasonable settlement. In support of this position Do-It-Fluid relies upon the decision of the District Court for the Virgin Islands in *Buntin v. Continental Ins. Co.,* 525 F.Supp. 1077, 1083–84 (D.V.I.1981). We find that decision distinguishable on several grounds. The *Buntin* opinion dealt with a case in which the insurance company "honestly but erroneously" believed that there

was no coverage, refused to defend against a claim, and rejected a settlement offer. The insurance company's duty to treat settlement offers as if it alone were liable for any judgment was not relieved by its good faith but erroneous belief that there was no coverage. Here, there has been no determination as yet whether Do-It-Fluid has coverage and Lloyds' refusal to consent to settlement in the face of a genuine concern over coverage does not constitute bad faith. Moreover, Lloyds did eventually provide an attorney to defend, and a settlement agreement was reached. In general, an insurer's seeking of a declaratory judgment on potential coverage and on the duty to defend dependent thereon before the trial on the main action does not support a charge of bad faith. 7C Appleman, *Insurance Law and Practice* § 4686, at 177–78 (Berdal ed. 1979).

In *Buntin,* a no-action clause was held unenforceable where the insurer rejected a settlement within the policy limits, despite obvious liability and the recovery of a verdict in excess of the policy limits. *Buntin* applies only to situations in which the issue is risk to the insured of a verdict in excess of the policy coverage and in which the insurer refuses a settlement within the policy limits in the erroneous though honest belief that there is no coverage. In this case, the risk to Do-It-Fluid is that a trial may develop facts revealing that there is no coverage at all.

As Do-It-Fluid has provided no basis for preclusion of Lloyds' defense of noncoverage under the policy, Lloyds should be permitted to go to trial on that issue. The unresolved factual question of the cause of Wetherhorn's death precludes summary judgment in favor of Do-It-Fluid.

**IV.**

Accordingly, the order of the district court denying summary judgment for Do-It-Fluid will be affirmed. The court's order granting summary judgment for Lloyds will be reversed and the case remanded to

the district court for further proceedings consistent with this opinion.

Costs taxed against the appellee.